**MARLIN & SALTZMAN**
Stanley D. Saltzman, Esq. (SBN 90058)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301-1555
Telephone:  (818) 991-8080
Facsimile:   (818) 991-8081
ssaltzman@marlinsaltzman.com
ckennedy@marlinsaltzman.com

**LAW OFFICES OF PETER M. HART**
Peter M. Hart, Esq. (SBN 198691)
Peter Choi, Esq. (SBN 249482)
12121 Wilshire Blvd., Suite 205
Los Angeles, California 90025
Telephone:  (310) 478-5789
Facsimile:   (509) 561-6441
phart@msn.com
pchoi.loph@gmail.com

Attorneys for Plaintiffs Abdullah, *et al.*, and the Class
(additional counsel listed on next page)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMMED ABDULLAH, et al., as an individual and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br>v.<br><br>U.S. SECURITY ASSOCIATES, INC., a Corporation, and DOES 1 to 10, inclusive,<br><br>                    Defendant. | Case No. CV 09-09554 PSG(Ex);<br>Case No. CV 15-02366 PSG(Ex) *consolidated with* Case No. CV-00984 PSG(Ex)<br><br>(Assigned to Hon. Philip S. Gutierrez)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:      August 14, 2017<br>TIME:      1:30 p.m.<br>CTRM:     6A |

***Additional Plaintiffs' Counsel***

Kenneth H. Yoon, Esq. (SBN 198443)
**LAW OFFICES OF KENNETH H. YOON**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone:  (213) 612-0988
Facsimile:   (213) 947-1211
kyoon@yoon-law.com

Larry W. Lee, Esq.  (SBN 228175)
**DIVERSITY LAW GROUP**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Telephone:  (213) 488-6555
Facsimile:   (213) 488-6554
lwlee@diversitylaw.com

Peter R. Dione Kindem, Esq. (SBN 95267)
**THE DION-KINDEM LAW FIRM**
21550 Oxnard St., Suite 900
Woodland Hills, California 91367
Telephone: (818) 883-4900
Facsimile: (838) 883-4902
Peter@Dion-KindemLaw.com

ii

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

**TO:   ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 14, 2017, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 6A in the above entitled courthouse located at 350 W. First Street, Los Angeles, California 90012, Plaintiffs, on their own behalf, and on behalf of the certified Class, will move for preliminary approval of a class wide settlement reached with Defendant U.S. Security Associates, Inc. ("Defendant," or "USSA").  Defendant does not oppose this Motion.

Said Motion shall be based upon this Notice of Motion, the accompanying Memorandum of Points & Authorities filed herewith, the Declaration of Stanley D. Saltzman, the Settlement Agreement entered into by the Parties, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

Pursuant to the Class Action Settlement Agreement, Exhibit A to the Declaration of Stanley D. Saltzman ("Saltzman Decl."), Plaintiffs hereby request that the Court enter the following order, following hearing on the motion as noticed above:

(1) Preliminarily approving the proposed settlement, and executing the Proposed Order Granting Preliminary Approval of the Class Action Settlement (Exhibit 2 to the Saltzman Decl.);

(2) Directing that the Class be given notice of the settlement in the form of the proposed Notice(s) agreed to by the parties, Exhibit 1 and Exhibit 2 to the Settlement Agreement, which Settlement Agreement is Exhibit A to the Saltzman Declaration, for the Court's approval;

(3) Scheduling a hearing to consider final approval of the settlement, entry of a proposed final judgment, and Class Counsels' application for an award of attorneys' fees and reimbursement of costs and expenses, as well as Service Awards to the representative Plaintiffs.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED:  June 23, 2017          **MARLIN & SALTZMAN, LLP**


By:   s/  Stanley D. Saltzman
          Stanley D. Saltzman
          Cody R. Kennedy
          Attorneys for Plaintiffs
          and the Class

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

# **TABLE OF CONTENTS**

I.     NATURE OF RELIEF SOUGHT ........................................................................1

II.    SUMMARY OF THE CLAIMS ........................................................................1

     A.    Plaintiffs and the Class Members are/were employed by Defendant as security guards/officers in California between July 1, 2007 and June 30, 2017. ....................1

III.   LITIGATION HISTORY ...................................................................................2

     A.    Initial Pleadings ...................................................................................2

     B.    Certification Proceedings....................................................................4

     C.    Post Certification Proceedings ...........................................................6

     D.    Mediation Proceedings.......................................................................7

IV.   SUMMARY OF THE SETTLEMENT ............................................................8

     A.    Summary of Settlement Terms ...........................................................9

     B.    Settlement Value...............................................................................12

          1.    Meal Period Claim:..................................................................13

          2.    Rest Break Claim:....................................................................14

          3.    Reimbursement Claims for Uniform Maintenance, Mandatory Training, Licensing & Certification....................................................14

          4.    Off-the-Clock Claim:...............................................................15

          5.    Vacation Claims.......................................................................16

          6.    Waiting Time Claims (Labor Code § 203) ..............................16

          7.    PAGA Claim.............................................................................16

V.    THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS FOR PRELIMINARY APPROVAL .................................................................19

     A.    The Settlement Resulted from Arm's-Length Negotiations. ..................................20

     B.    The Settlement Has No Obvious Deficiencies........................................................22

VI.   NATURE AND METHOD OF CLASS NOTICE ........................................23

VII.  CLAIMS ADMINISTRATION......................................................................23

VIII. ATTORNEYS' FEES AND COSTS ...............................................................24

v

IX.   SERVICE AWARD FOR NAMED PLAINTIFFS ...........................................25

X.   THE REST BREAK AND OFF THE CLOCK CLAIMS SHOULD BE PRELIMINARILY CERTIFIED FOR SETTLEMENT PURPOSES................................26

    A.   Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class ....................27

        1.   Numerosity...........................................................................................27

        2.   Commonality........................................................................................27

        3.   Typicality .............................................................................................27

        4.   The Adequacy Requirements Are Satisfied...............................................28

    B.   The Fed.R.Civ.P 23(b) Standards Are Satisfied .......................................28

        1.   Common Issues Predominate.................................................................28

        2.   The Class Action Device Is Superior to Other Available Methods of Adjudication.........................................................................................29

        3.   No Manageability Issues Preclude Certification........................................29

XI.   CONCLUSION...........................................................................................30

# TABLE OF AUTHORITIES

**Federal Cases**

*Abdullah, et al. v. U.S. Security Associates, Inc.*,
   731 F.3d 952 (9th Cir. 2013) ...................................................................6

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. Cal. 2001) ..........................................................27

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................19

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...........................................................................28

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...............................................................25

*Gatreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) .................................................................19

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................22

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .........................................................19, 29

*Lazarin v. Pro Unlimited, Inc.*,
   2013 WL 3541217 (N.D. Cal. 2013) .....................................................30

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...............................................................22

*Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................20

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,
   688 F. 2d 615 (9th Cir. 1982) ...........................................................19, 20

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. Cal. 2010) ..................................................20, 28

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................25

*Tierno v. Rite Aid Corp.*,
   2006 WL 2535056 (N.D. Cal. 2006) .....................................................27

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
   593 F.3d 802 (9th Cir. Cal. 2010) ..........................................................27

**State Cases**

*Augustus v. ABM Security Service*
    (2016) 2 Cal. 5th 257 .................................................................14, 28

*Kirby v. Immoos Fire Protection, Inc.*,
    53 Cal. 4th 1224 (2012) ............................................................13


**Statutes and Rules**

Fed.R.Civ.Pro. Rule 23 ...................................................23, 27, 28, 29


**Other Authorities**

*Manual for Complex Litigation*, *Fourth*, § 22.661 (2004).........................19

*Manual of Complex Litigation*, *Fourth*, § 21.632 (2004) ..........................19

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   NATURE OF RELIEF SOUGHT

By this unopposed motion, Plaintiffs and the Class(es) certified herein seek preliminary approval of a substantial, non-reversionary settlement of all claims asserted against Defendant in the matter of *Abdullah, et al. v. U.S. Security Associates, Inc.*, ("*Abdullah*") and in the matter of *Stone v. U.S. Security Associates, Inc.*, ("*Stone*"). In consideration of the release to be obtained by the Defendant herein, USSA is obligated to pay a total of Twenty One Million dollars ($21,000,000.00) to the Plaintiffs and the Class(es) certified herein.

After over eight years of extensive litigation, very often involving cutting edge and novel legal theories, the parties have now reached the substantial settlement summarized above. The details of the settlement are set forth in the Class Action Settlement Agreement, Exhibit A to the Declaration of Stanley D. Saltzman (hereinafter "Saltzman Decl.").

### II.   SUMMARY OF THE CLAIMS

**A.   Plaintiffs and the Class Members are/were employed by Defendant as security guards/officers in California between July 1, 2007 and June 30, 2017.**

Plaintiffs allege that Defendant utilizes various unlawful policies and practices that violate the California Labor Code as reflected in the class certification order, the most important of which for purposes of this action is its policy of requiring on-duty meal periods at substantially all of its worksites/posts. Plaintiffs also allege several secondary violations, including on-duty rest breaks, unpaid wages for travel time, unpaid reimbursements for travel time and for certain work-related training and certifications, and forfeited vacation wages and derivative penalties under the Labor Code. Plaintiffs allege that Defendant's policies and practices uniformly violate the Labor Code and associated Industrial Welfare Commission Wage Orders, and that Defendant cannot avail itself to the "nature of the work" exception so as to permit on-

1

duty meal periods, which is Defendant's primary defense to the on-duty meal period claim. Defendant denies that it violates the law and also contends that it can obtain decertification of Plaintiffs' claims.

The proposed settlement resolves all claims alleged in this action, including two claims which were originally denied certification, but as discussed hereafter have been included in the settlement as part of the very strenuous and equally extended negotiations leading to the final settlement agreement.  Plaintiffs and their counsel firmly believe the class members will strongly support this substantial settlement.

## III.   LITIGATION HISTORY

### A.   Initial Pleadings

Plaintiff Abdullah filed a putative class action on January 13, 2009, against Defendant in the Superior Court of California for the County of Los Angeles, Case No. BC405465. Plaintiffs Kimbrough and Aguilar were later added as additional plaintiffs. Plaintiffs filed a First Amended Complaint on March 9, 2009, and a Second Amended Complaint on December 18, 2009. The Second Amended Complaint alleges causes of action for: (1) failure to indemnify for expenses and losses in discharging duties in violation of Labor Code section 2802; (2) forfeiture of vacation wages in violation of Labor Code section 227.3; (3) failure to provide meal periods and authorize and permit rest periods in violation of Labor Code section 226.7; (4) failure to keep accurate records in violation of Labor Code section 226; (5) failure to timely pay final wages in violation of Labor Code section 203; (6) compelled purchases in violation of Labor Code section 450; (7) failure to pay reporting time pay in violation of the Industrial Welfare Commission Wage Order; (8) failure to pay regular wages for all hours worked; (9) failure to pay minimum wage for all hours worked; and (10) unlawful business practices in violation of Business and Professions Code section 17200. The *Abdullah* Plaintiffs sought to represent a class of all of Defendant's current and former security guard/officer employees who worked in California at any time between July 1, 2007 and the present. On December 30, 2009,

2

1  Defendant removed the action to the United States District Court for the Central
2  District of California where it was assigned Case No. CV 09-9554-GHK (Ex).

3      A second putative class action was filed several years later against this
4  Defendant by Plaintiff Juan-Leal Cardenas, on May 31, 2013, in the Superior Court
5  for the County of Riverside, Case No. RIC 1306430.  Plaintiff Cardenas later filed a
6  First Amended Complaint alleging causes of action for (1) failure to provide rest
7  breaks; (2) failure to provide meal breaks; (3) failure to pay overtime wages;
8  (4) conversion; (5); failure to provide accurate wage statements; (6) failure to timely
9  pay final wages; (7) unfair business practices in violation of Business and Professions
10 Code section 17200; and (8) civil penalties under the California Labor Code Private
11 Attorneys General Act of 2004. Cardenas sought to represent a class of current and
12 former employees who worked for Defendant in California. On May 16, 2014,
13 Defendant removed the action to the United States District Court for the Central
14 District of California, where it was assigned Case No. 14-CV-00984. On May 28,
15 2014 the action was related to the *Abdullah* action.

16     Plaintiff Robert Stone subsequently filed a representative action on January 27,
17 2015, in the Superior Court for the County of Los Angeles, Case No. BC570451,
18 alleging claims for: (1) failure to pay compensation due for hours worked; (2) meal
19 period violations; (3) rest period violations; (4) failure to timely pay final wages in
20 violation of Labor Code section 203; (5) wage statement and recordkeeping
21 violations; (6) violation of Labor Code section 2802; (7) violation of Business and
22 Professions Code section 17203; (8) recovery of civil penalties pursuant to the
23 California Private Attorney General Act; and (9) wrongful retaliation in violation of
24 public policy.  On March 31, 2015, Defendant removed the action to the United
25 Stated District Court for the Central District of California, where it was assigned Case
26 No. 15-CV-02366.  On April 2, 2015 the *Stone* action was also related to *Abdullah.*

27     On July 6, 2015, the Court issued an order striking all class allegations from
28 the operative *Cardenas* and *Stone* complaints, leaving only individual claims and

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

representative California Labor Code Private Attorneys' General Act of 2004 ("PAGA") claims (hereinafter referred to as "the July 6, 2015 Order"). Additionally, said Order dismissed without prejudice the *Abdullah* Plaintiffs' rest break, off-the-clock and canceled/reduced shift claims. On July 17, 2015, the Court issued an order consolidating the *Cardenas* and *Stone* actions for all purposes under Case No. 14-CV-00984 and dismissing 15-CV-2366 without prejudice. On September 9, 2016, the *Juan-Leal Cardenas v. U.S. Security Associates, Inc.* action was dismissed with prejudice when Plaintiff Cardenas settled his claims on an individual basis, leaving *Robert Stone v. U.S. Security Associates, Inc.*, under Case No. 14-CV-00984, as an individual and PAGA action, still pending under Case No. 14-CV-00984. This settlement seeks to resolve the *Abdullah* and *Stone* actions.

## B.   Certification Proceedings

On January 11, 2011, following extensive pre-certification discovery and equally extensive contested briefing by the Parties, the District Court certified the *Abdullah* action to proceed as a class action. In Defendant's opposition to certification, it introduced one hundred and three (103) declarations of class members in its attempt to defeat certification.  Nonetheless, the Court certified the primary claim alleged in the action, wherein Plaintiffs challenged Defendant's "on-duty" meal policy, as well as six secondary and/or derivative claims:

Meal Break Subclass. A Subclass of all of Defendant's past and present California Security Guard/Officer employees who worked more than six hours and were not provided a checked-out meal break in any work shift from July 1, 2007 to the present, and who were not compensated for such on-duty meal break(s) pursuant to California Labor Code §226.7(b).

Uniform Maintenance Subclass. A subclass of all of Defendant's past and present California Security Guard/Officer employees whom Defendant required to maintain a uniform during the period from July 1, 2007 to the present, and who were not provided reimbursement.

4

<u>Mileage Expenses Subclass</u>. A subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for the mileage costs of operating a personal vehicle in carrying out work-related duties during the period from July 1, 2007 to the present.

<u>Mandatory Training, Licensing, and Certifications Subclass</u>. A subclass of all of Defendant's past and present California Security Guard/Officer employees who were not reimbursed for mandatory training, licensing, and certifications during the period from July 1, 2007 to the present.

<u>Vacation Subclass</u>. A subclass of all of Defendant's former California Security Guard/Officer employees whose employment ended between July 1, 2007 to the present, and whose employment totaled fewer than 2,080 hours and who were not paid at the end of their employment any vested, unused vacation wages.

<u>Wage Statements Subclass</u>. A subclass of all of Defendant's past and present California employees who worked as Security Guard/Officers from July 1, 2007 to the present, who, due to the violations claimed in one or more of the other certified subclasses, received an inaccurate itemized wage statement.

<u>Waiting Time Subclass</u>. A subclass of all of Defendant's California employees who worked as Security Guard/Officers from July 1, 2007 to the present, who were not paid wages within 72 hours of their termination and who qualify as a member of one of the other certified subclasses.

Following certification, Defendant then initiated its attack on the Order. First, it moved for reconsideration of the Court's certification order. That motion, after yet further full and complete briefing, was denied by the District Court.

Thereafter, Defendant filed a petition for leave to appeal the Order granting certification, as to the primary "on-duty" meal break claim, which petition was successful. The Parties then engaged in full merits briefing of the certification order as to the on duty meal break issue, and then ultimately the Ninth Circuit heard oral argument on the appeal. The result of this all-out battle over certification was the

5

published decision of the Ninth Circuit, upholding the certification of the on-duty meal break claim, in *Abdullah, et al. v. U.S. Security Associates, Inc*., 731 F.3d 952 (9th Cir. 2013).  Defendant then unsuccessfully sought *en banc* review.

Still seeking to undo the order certifying the primary claim in the case, Defendant then petitioned for certiorari to the United States Supreme Court.  After briefing, that request was also denied. (*Id*., *cert. denied*, 135 S.Ct. 53 (Oct. 6, 2014)). The resulting final decision of the Ninth Circuit was not only critical to this case, but to the bench and bar generally.  In less than three years, the decision has been cited in more than one hundred and forty decisions.

## C.    Post Certification Proceedings

Even prior to moving for certification, the parties had engaged in extensive discovery efforts, both as to certification and merits issues relevant to Defendant's wage policies and practices and the class' potential damages. Class Counsel also reviewed extensive production of various databases and numerous hard copy payroll records consisting of days/time worked and payroll issues. (Saltzman Decl. ¶ 18). Additionally, and still prior to certification, plaintiffs engaged the assistance of an expert witness to aid in the data and records review.  Each of the proposed class representatives in the *Abdullah* action also had their depositions taken.

After the Ninth Circuit's decision in *Abdullah* had issued, <u>and</u> multiple settlement entreaties had failed to resolve the case, the matter was then on a clear path to trial.  At that time, Class Counsel associated in yet another class action law firm, Marlin & Saltzman LLP, which firm has actual class action trial experience, having participated in five class action trials. (*See* Saltzman Decl. ¶ 48).  With this additional class action expertise, Class Counsel began to move forward systematically towards trial, while keeping the door open to resolution if appropriate.

But first, following the Mandate from the Ninth Circuit, and Court's grant of the Class' request that the class period be extended forward to include the two plus years of the appeal, notice of the certification of the class was mailed to all current

6

and former guards employed by Defendant in California from July 1, 2007, until June 30, 2015, a group numbering just over 15,000.[1]  Out of such a large class, only thirty putative class members elected to opt out of the class.

Thereafter, the parties continued with in-depth merits discovery. This included fourteen class member depositions, seven depositions of Defendant's statewide management personnel, multiple (four) expert witness depositions of Plaintiffs' and Defendant's expert witnesses within the time frame allowed by the District Court in its Pre-trial Scheduling Order, further significant production of classwide payroll and time and attendance records, and numerous client contracting records and documents by Defendant, and a further deposition of Class Representative William Kimbrough. (Saltzman Decl. ¶ 18).  Finally, after the close of all of this discovery, including expert discovery, and within the time limits established by the Court's pre-trial deadlines, the *Abdullah* Plaintiffs and Defendant filed joint cross motions for summary judgment, again as to the primary issue of the on-duty meal breaks.

Additionally, Defendant also filed a motion for decertification of the class.

## D.   Mediation Proceedings

After the above-noted dispositive summary judgment and decertification motions were fully briefed, and pending for hearing, and while the parties continued to prepare themselves for a class action trial to take place in 2017, the parties continued to discuss the possibility of resolution.  Ultimately, they agreed to attend one final mediation session before well-known class action mediator Hunter Hughes, Esquire, of Atlanta, Georgia, on November 22, 2016.

Substantial time was expended by Class Counsel and defense counsel prior to the mediation to clarify the accuracy and depth of the information provided.  In the weeks leading up to the mediation, counsel were in regular contact over the many

---

[1] Following the Ninth Circuit's remand to the trial court, the Court extended the class period in *Abdullah* until June 30, 2015 as reflected in the July 6, 2015 minute order.

details of the case which would be "in play" at the mediation, all while each party was preparing its extensive dispositive motions seeking summary judgments in their favor, and while Defendant prepared its motion for decertification of the *Abdullah* class. (Saltzman Decl. ¶¶ 19-21). This extensive, and cooperative, exchange of information was ultimately a key factor in the negotiations which ensued.

Nonetheless, the parties were again stymied at mediation and unable to resolve the case. However, Mr. Hughes continued reaching out to the parties over the ensuing months, and eventually the Parties agreed to the terms of the Settlement Agreement now before the Court, to resolve the *Abdullah* action, plus the representative wage claims under PAGA raised in the *Stone* action. (Saltzman Decl. ¶¶ 23-26)

## IV. SUMMARY OF THE SETTLEMENT

As more fully explained below, the parties believe that the proposed settlement meets the criteria for preliminary approval which are set forth in the *Manual for Complex Litigation*, 4th Ed., and that it is well within the range of what would be fair, reasonable, and adequate in this case. Thus, the *Abdullah* and *Stone* Plaintiffs request that preliminary approval of the settlement be granted.

Specifically, the parties have agreed to a ___**non-reversionary**___ gross settlement in the amount of **$21 million**. The settlement will result in the Class Members receiving substantial sums, and represents an outstanding resolution of a heavily contested eight year long lawsuit. Notably, the class members ___**will not be required to complete and submit any claim forms in order to receive their share of the settlement proceeds.**___ All participating class members (*i.e.*, those who do not elect to opt out of the settlement) will have a settlement check mailed to them once the settlement is final.

The parties have agreed on the form of the Notices of Class Action Settlement, to be mailed via first class mail to all the Class Members to inform them of the terms of the Settlement. The proposed Notices of Class Action Settlement are attached as Exhibit 1 and 2 to the Class Action Settlement Agreement, Exhibit A to the Saltzman

8

Decl. The parties have further agreed to the designation of CPT Group, Inc. as the Settlement Administrator, and other terms that are necessary and customarily provided by such class action notices.

### A.   Summary of Settlement Terms

The terms of the settlement are set forth in the Settlement Agreement attached to the Saltzman Decl. as Exhibit A thereto.  The principal terms are:

a.   Defendant shall pay twenty one million dollars ($21,000,000.00).

b.   After deduction for all approved payments for settlement administration costs, awards of attorneys' fees and costs, Service Awards to the named plaintiffs, agreed payroll tax payments, the substantial PAGA payment, all remaining funds will be paid to the Class Members with absolutely no right of reversion as to any of the funds.

c.   There are two different groups of Settlement Class Members: (1) those security guards whom were provided notice of the class action of the *Abdullah* action following the successful certification motion and its affirmance by the Ninth Circuit and who did not opt-out of the *Abdullah* action upon receiving such notice ("Original Class Members"); and (2) those security guards who did not fall within the Original Class Member definition because they had not yet been employed by Defendant as of the Notice mailing in 2015 ("Newly Added Class"). (*See* Section I "Definitions" at ¶¶ R, T).

d.   The Original Class Members will be part of the "Off the Clock" and "Rest Break" Subclasses[2] pursuant to the settlement so long as they do not now submit a request for exclusion from those subclasses. (*See*

---

[2] The parties seek to have the Court certify the "Off the Clock" and "Rest Break" Subclasses for purposes of settlement, and thus, the parties stipulate to vacate the Court's July 6, 2015 Order wherein the Court permitted the dismissal of these claims without prejudice. (Settlement at ¶¶ 10 and 11).

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

Section I "Definitions" at ¶¶ R, T, U, BB; Section III "Terms of Settlement" at E "Certification of the Rest Period & OTC Subclasses").

e.  The Newly Added Class members will release the Class Released Claims, including the Subclass claims, if they do not submit a request for exclusion from the entire case when Notice is sent out following preliminary approval. (*Id.*)

f.  The Class Released Claims are defined as: "All wage and hour claims that were plead or could have been plead under the Labor Code, Wage Orders or federal, state or local wage and hour laws, including the Fair Labor Standards Act ("FLSA"), based on the facts alleged in the *Abdullah* Second Amended Complaint and the *Stone* Complaint, including claims for: (a) any vested, unused vacation wages; (b) any meal break violations, including non-compliant on-duty meal breaks; (c) any unreimbursed work-related expenses, including, but not limited to, expenses for mandatory training, licensing and certifications, unreimbursed expenses for operating a personal vehicle or using a personal cellular phone while carrying out work-related duties, and unreimbursed expenses for uniform maintenance; (d) unpaid overtime wages; (e) failure to pay minimum wages or regular wages; (f) unpaid wages due to "off-the-clock" work (during the Subclass Period only); (g) rest break violations (during the Subclass Period only); (h) receipt of inaccurate itemized wage statements or record-keeping violations; (i) waiting-time penalties due to the failure to pay wages within 72 hours of termination; (j) all claims under PAGA that could have been premised on the claims, causes of action or legal theories described above in (a)-(i); (k) all claims for unfair business practices under California Business & Professions Code section 17200 *et seq.* that could have been premised on the claims, causes of action or legal theories of relief described above

10

in (a)-(i); (l) conversion; and (m) all damages, including, but not limited to, liquidated damages, civil and statutory penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief identified above in (a)-(l) (collectively, the "Released Claims"). The period of the Released Claims shall extend to the limits of the Class Period. The Parties agree that the judgment, and release of claims provided herein, shall have *res judicata* effect. The definition of Released Claims shall not be limited in any way by the possibility that Plaintiffs or Settlement Class Members may discover new facts or legal theories or legal arguments not alleged in the operative pleadings in the Actions but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims."

g.  The Release of Claims Period is "the period from July 1, 2007 through June 30, 2017, for the originally certified and settled claims, and the period from July 1, 2013 through June 30, 2017, for the Off the Clock and Rest Break sub-class claims." (*See* Section I "Definitions" at ¶ DD).

h.  The parties have selected CPT Group, Inc. as the Settlement Administrator, which has submitted a "not to exceed" bid for all services in the amount of $120,000.00. (Saltzman Decl. ¶ 28).

i.  The Parties have agreed to two separate forms of the Notice of Class Action Settlement ("Notice"), copies of which are attached to the Settlement Agreement as Exhibits 1 and 2 thereto.

j.  The Settlement Administrator will calculate the total Compensable Work-shifts for all Settlement Class Members as a percentage of each Settlement Class Member's number of work-shifts during the Class Period and Subclass Period as against the total number of work-shifts by all the Settlement Class Members.

11

k.    For tax purposes, Individual Settlement Payments shall be allocated and treated as follows: one-quarter (25%) as wages; one-quarter (25%) as penalties; and one-half (50%) as interest. (*See* Section III "Terms of Agreement" at "Individual Settlement Payments" at ¶ 30).  This is reflective of the long length of the litigation, leading to larger than normal possible interest, if it was obtained.

l.    Class Members shall have 30 days in which to request exclusion or object to the settlement. (*See* Section I "Definitions" at ¶ GG). If they do not affirmatively opt out, then their settlement share will be mailed to them following final approval.  Thus, participation could not be easier.

m.    Counsel for the Class shall apply to the Court for an award of fees not to exceed one-third of the total non-reversionary settlement payment, plus reasonable costs and expenses, not to exceed $150,000.  (*See* Section III "Terms of Agreement" at "Class Counsel Award" at ¶ 35).

n.    The *Abdullah* Plaintiffs will seek Service Awards in the amount of $15,000.00 each, and the *Stone* PAGA Representative Plaintiff will seek an award in the amount of $5,000.00. (*See* Section III "Terms of Agreement" at "Class/PAGA Representative Service Award" at ¶ 34).

o.    The settlement allocates $500,000.00 to resolve the PAGA claims, with 75% of that amount to be paid to the LWDA and the remaining 25% to be added to the Net Settlement Fund. (*See* Section III "Terms of Agreement" at "PAGA Payment" at ¶ 38).

**B.    Settlement Value**

This settlement, as is true of literally every settlement ever reached, represents a compromise between the two sides, which have battled through these issues for the last eight years.  As the record reflects, the seemingly never-ending litigation and appellate proceedings enabled the Defendant to pursue literally every defense legally available to it. This is hardly surprising, since the primary claim in the case

12

challenged its use of "on-duty" meal breaks throughout its client roster.

Nonetheless, following this extensive workup of the case, and the equally extensive utilization of experts in connection with the certification briefing and the preparation for trial, both sides were able to quantify the claims presented, the relative strengths and weaknesses thereof, and then, considering all that information, reach the settlement now before the Court.

In that regard, the following information presents a fair and reasonable analysis of the claims presented, valued and settled, both as to the liability and damages:

1.   Meal Period Claim:

As stated, this was the primary driving factor in the case.  In preparing for the mediation, Class Counsel worked with their expert, Sean Chasworth, of Phillips, Fractor & Company, to prepare a damages model based upon extensive review of the data produced, deposition testimony, and the governing law as viewed through Plaintiffs' perspective. In addition, Plaintiffs also had to consider Defendant's view of those damages in order to be able to approach a possible resolution.  Thus, while Plaintiffs estimated that the total damages possible from the primary claim could exceed $60mm, they also recognized that Defendant would view that same damage claim as representing no more than $38mm dollars of exposure to it, due to its claim that interest did not apply to this meal break claim.  The mediator at the fourth and final mediation which led to the settlement before the Court opined that Defendant's view of the damage claim was quite reasonable, and could prevail at trial, even if the case was successfully tried on liability.[3] (Saltzman Decl. ¶ 38).

The meal break claim, of course, was premised on the allegation that

---

[3] As Defendant asserts, the law as to whether interest is recoverable for meal period premiums owed is not settled at this time. *See Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1224 (2012) (holding that an action to recover meal period premiums are not an action to recover wages within Cal. Lab. Code § 218.5). Thus, if the failure to pay meal period premiums is not a failure to pay wages, then pre-judgment interest might not be recoverable, thus triggering the much lower number.

Defendant's guards were subject to an on-duty agreement governing the Defendant's single-guard staffing model, and thus, all such guards were damaged unless and until Defendant proves otherwise, as is its right when claiming an offset from the damages total. Thus, even at trial, faced a continued challenge to certification based on a claim that not all the guards were subjected to the same policy.

Thus, for settlement purposes and allowing for the uncertainties and vagaries of trial, this claim could be reasonably valued at 75% of its $38mm value, yielding a value for settlement negotiation purposes of $28,500,000.00. (Saltzman Decl. ¶ 38).

### 2.  Rest Break Claim:

The rest break claim was not originally certified by the Court. However, as the case neared mediation/trial, Plaintiffs advised the Defendant that they would be renewing the request for certification of this claim, based on the recent decision of the California Supreme Court in *Augustus v. ABM Security Service* (2016) 2 Cal. 5th 257. Certification of this claim for settlement purposes is discussed, *infra*, in Section X.

Accordingly, as a condition of the settlement negotiations, the Parties included this claim in the mediation, and valued that claim for settlement purposes, albeit limited to the four years going back from the proposed date of preliminary approval. For purposes of this settlement, and going back four years, this claim at its 100% valuation, could be worth as much as $15,200,000.00. Allowing for the fact that it had not been certified on the first attempt, and that the facts to support it are not as clear as those supporting the meal period claim, the claim could reasonably be discounted by a factor of 50%, yielding a value for settlement negotiation purposes of $7,600,000.00. (Saltzman Decl. ¶ 39).

### 3.  Reimbursement Claims for Uniform Maintenance, Mandatory Training, Licensing & Certification

Defendant did not reimburse for the costs of maintaining a uniform. Plaintiffs obtained certification of this claim. However, as trial prep discovery went on, Plaintiffs learned that this claim, even if valid, had no more than nuisance value and

14

thus for settlement purposes Plaintiffs had to assign no more than a nominal value to the claim.  Defendant's witnesses testified quite credibly that it paid for any required training, but that it did not pay for discretionary training courses, thus essentially complying with the law. Numerous guards contacted by counsel in order to try to verify this confirmed this to be true.  As for the mileage claim which also obtained certification, Defendant again credibly testified that very few guards were ever asked to use their own vehicles and that in fact the most common occurrence was that once a guard was "posted" for the day, he or she stayed at the one site, thus rarely triggering the need to drive while on company time.   Uniform reimbursement occurrences also turned out to be rare events. (Saltzman Decl. ¶ 40).

Thus, these three reimbursement claims together were valued at no more than two million dollars for settlement purposes, assuming that certification of the claims could survive, or that they could overcome the threatened motion for partial summary judgment.  A reasonable value for settlement negotiation purposes would therefore by in the $1,000,000.00 range. (Saltzman Decl. ¶ 41).

### 4.   Off-the-Clock Claim:

Plaintiffs alleged that Defendant is liable for failing to pay for worktime spent by Class Members to travel to/from worksites/posts during their shifts.  As was learned during the post-certification discovery, this was simply a rare occurrence, although to the extent that it did occur, it could be fairly certified and valued.  This claim was denied certification, but for settlement purposes it is certainly appropriate to re-visit the claim, value it (modestly) and settle it along with the other claims.  In that vein, Plaintiffs' Counsel estimate that approximately 20% of the Class actually drove to/from different worksites/posts during their shifts, approximately four times per week, so that for the 2,300 or so guards active at any one time, this claim would project a possible value of approximately $1,181,648.00, arrived at as follows: 20% of 2,300 guards, or 460 guards x four times per week = 1,840 OTC events per week, x 52 weeks = 95,680 events of OTC each year, x 4 years = 382,720 events of OTC

15

for the four year look back period, x 30 OTC minutes per event = 11,481,600 total OTC minutes, divided by 60 minutes to yield hours of OTC time = 191,360 hours, x 9.50 per hour = $1,817,920.00.   This is full value, so an appropriate value for settlement negotiation purposes would be about 65% for this claim, or $1,181,648.00. (Saltzman Decl. ¶ 42).

### 5.   Vacation Claims

Plaintiffs alleged that Defendant maintained vacation policies and practices that resulted in a forfeiture of vacation wages to employees who were separated from employment with less than 2,080 hours of employment and were not paid a pro-rata portion of a "retention bonus," which Plaintiffs contend is actually vacation wages, and which is equivalent to forty hours of pay for 2,080 regular hours worked.  Post-certification discovery was even more harsh on this claim.  Discovery and testimony confirmed that this claim simply was not likely to exist, such that while it is being settled and released, it could only be valued at a nominal $100,000.00 level for the entire class period.  (Saltzman Decl. ¶ 43).

### 6.   Waiting Time Claims (Labor Code § 203)

Absent a wage claim to tie this claim to, it does not exist.  The strongest claims in this case were the meal and rest break claims, neither of which generate a wage to which a § 203 claim could be tethered.  The vacation claim largely dissipated over the course of the post-certification discovery, so there was simply no logical way to project a § 203 waiting time claim.  It was therefore not valued, and within this case is subject to release and dismissal.

### 7.   PAGA Claim

PAGA claims are amongst the most difficult to evaluate for settlement valuation purposes.  This is because there are so many impediments to the actual entry of the civil penalty permitted in the act.  First, defendants regularly argue that no penalty can accrue until such time as a court has actually found a violation to exist, and then only after that finding can the penalties accrue.  Here, there has yet to

16

be any such finding.  Additionally, § 2399(e)(1) affords the trial court discretion to lower the penalty, when the Labor Board would have that discretion, and also, under § 2399(e)(2), whenever an award would be "unjust, arbitrary and oppressive, or confiscatory."  It is often argued by defendants that in situations where an award of damages has already been found, that the imposition of yet another penalty under the PAGA would necessarily be unjust, *etc*., such that it should not be imposed.  Many of the courts to address this penalty award have so found, and have exercised broad discretion to dramatically limit such awards.  Thus, while "PAGA only" claims are viewed differently, there are severe limitations in cases where damages are already "in play" based on underlying wage violation claims.

Thus, while the PAGA calculation herein for approximately 2,300 normally staffed guards would easily exceed $35MM, the likelihood of that sum ever being awarded, or anything even close to it where, as here, the underlying "premium pay" sums are properly sought, is extremely slim.  Accordingly, for settlement purposes, that penalty award was reduced to the $3.5MM range, and then negotiated for various risks, as were all the other claims, to the sum of $500,000.00, a still very large PAGA award in comparison to those "normally" presented to the courts for approval.   In fact, it is highly uncommon to see PAGA resolutions in excess of $100,000.00. Total Value of the Claims for Negotiation Purposes:

Based on the detailed analysis of the claims as presented above, and as further set forth in the Saltzman Declaration, when approaching the last and final attempt to resolve the claims at mediation, Plaintiffs viewed the total value of all the Claims as being $41,654,408.00, including the PAGA amount at the reduced sum of $500,000.00.   Reasonably discounting those claims at mediation, to allow for a settlement to occur, thus obviating yet years more of ongoing litigation, obtaining certainty of recovery and still obtaining a strong percentage of the total damages in play at the mediation, the case settled for the agreed sum of $21,000,000.00.  This represents 50.4% of the total reasonable exposure, a truly outstanding result in any

17

1   case, and a percentage rarely achieved in employment class action litigation.  It was

2   only possible here due to the never-ending persistence of Class Counsel and the

3   Representative Plaintiffs, who passed up three prior opportunities to settle the case

4   for lesser percentages, and kept working towards trial, when this settlement was

5   finally achieved.  (Saltzman Decl. ¶ 47).

6          Estimated Average Individual Settlement Payment

7          On a very elementary level, if all Class Members do not opt of the settlement,

8   the basic average estimated individual settlement across the entire class would be

9   approximately $1,235.00, gross, before all deductions. ($21,000,000 divided by

10  17,000 guard class members).

11         However, a far more relevant and refined way to consider average payments, in

12  order to adjust for the large turnover rate which is so typical in security guard

13  operations (here the turnover rate was as high as 50% some years), is to analyze the

14  average payments tied to what is sometimes referred to as the number of "full time

15  equivalent" (or FTE) employees.  This is determined by analyzing the employment

16  data to discern how many class member employees were working for the Defendant

17  **at any given time** during the class period – the so-called "snapshot" of employee

18  numbers.  Thus, if there had been no turnover whatsoever (a difficult thing to imagine

19  in the security guard world), the data in this case reveals that there were normally

20  about 2,300 workers holding the class positions at any given time during the class

21  period.  Therefore, if they all worked throughout the class period they would all

22  receive a full time equivalent settlement award.  Analyzed this way, the average

23  settlement amount to be received herein on a "per position" FTE basis would be

24  $9,130.00 ($21MM divided by 2,300 employees).  Thus, any employees who happen

25  to have remained with USSA as class member guards throughout this class period,

26  and would thus have a full class member share of workshifts, would stand to receive a

27  gross settlement allocation of $9,130.00 each.  That is a truly extraordinary sum, and

28  is the most relevant manner by which to weigh the recovery.

18

# V. THE SETTLEMENT CLEARLY MEETS, AND EXCEEDS, THE STANDARDS FOR PRELIMINARY APPROVAL

The court has broad discretion to grant approval of class action settlements, and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). Court approval involves a two-step process, with the Court first determining whether a proposed class action settlement deserves preliminary approval so that notice of the same can be disseminated, and then after notice is given to Class Members, whether final approval is warranted. *Manual of Complex Litigation, Fourth*, § 21,632 (2004); *see also Hanlon*, *supra*, at 1019. At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). There is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon*, *supra*, at 1019. Courts strongly favor settlement, particularly in complex class actions. *See, e.g., Class Plaintiffs*, 955 F.2d at 1276.

Although at this stage of preliminary approval, the Court is not expected to engage in the more rigorous analysis that is required for final approval (*see Manual for Complex Litigation*, *Fourth*, § 22.661 at 438 (2004)), the Court's ultimate fairness determination will include balancing several factors, amongst the following:

> … the strength of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement.

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). Not all of the above factors apply to every class action

19

settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval.  *Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

Based on the detailed and extensive presentation set forth above, including the claim settlement evaluations, it is submitted that this settlement not only satisfies the criteria for preliminary approval, but also that this Court should be comfortable that it will easily satisfy the criteria for final approval at the appropriate time.

### A.    The Settlement Resulted from Arm's-Length Negotiations.

The Ninth Circuit has long supported settlements reached through arms' length negotiation by capable opponents.   The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral (in this case, several different leading neutrals), both of which factors are present here:

> ...the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.* at 965, quoting *Officers for Justice*, *supra*, at 625.

The *Rodriguez* court "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and [has] never prescribed a particular formula by which that outcome must be tested."  *Rodriguez, supra*, at 965.  As the Court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value."  *Id.* at 965 (citations omitted).

The proposed settlement here is the product of arm's-length negotiations between the Parties.  In fact, resolution was not reached until the fourth full mediation session, such that it can clearly be said that the Parties thoroughly thrashed out the issues over the course of numerous mediations, over a several year period.  The initial

20

two prior mediations were held before Mark Rudy, Esquire, one of California's foremost mediators in the area of employment class actions. The first of these mediations occurred prior to Plaintiffs filing their motion for certification. The second took place after the district court had granted certification, but before the appeal of that ruling.  The third mediation was supervised by Hunter Hughes, Esquire, another prominent nationwide class action mediator, and was held following the issuance of the Ninth Circuit's decision, but while the Defendant's petition for certiorari was pending before the U.S. Supreme Court.  In effect, mediations were attempted at every logical and critical juncture of the case history.  (Saltzman Decl. ¶¶ 22-24).

As discussed above, Plaintiffs conducted significant investigation of the facts and law during the prosecution of this action, including: (1) review and analysis of critical documents; (2) filing and winning the certification motion; (3) defending the certification order in *Abdullah* at the Ninth Circuit and opposing Defendant's petition for *en banc* review of the panel decision and subsequent petition for certiorari with the Supreme Court; (4) deposing numerous Defendant witnesses over the course of the entire litigation; (5) attending and defending fourteen class member depositions across California, which required committing no less than six plaintiff lawyers for this phase of the discovery process, including numerous day and over-night trips throughout California; (6) reviewing detailed employment data, payroll data, and numerous other relevant data sets; (7) retention of experts for the purpose of conducting a comprehensive analysis of the data obtained, and to assist with providing a damages analysis prior to the most recent mediation; (8) deposing Defendant's three expert witnesses; (9) filing and opposing cross motions for summary judgment; (10) attending four separate mediations before well regarded class action mediators; and (11) negotiating the terms of the settlement and preparing all documents relevant to its approval, among other things. (*See generally*, Saltzman Decl., throughout).  Plaintiff's' counsel also considered the strengths and weaknesses of their case, and of course thoroughly examined all of Defendant's defenses.  This

21

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

settlement of $21,000,000.00 represents an outstanding recovery for the class.

Ultimately, on the fourth attempt, the parties were able to negotiate this settlement, taking into account the costs and risks of continued litigation.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *H&R Block Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Plaintiffs have also taken into account the uncertainty and risk of further litigation, and the difficulties and delays inherent in such litigation.

Based on the foregoing, Plaintiffs and their counsel have determined that the settlement set forth in the Agreement is fair, adequate and reasonable, and is in the best interests of Plaintiffs and the Settlement Class. (Saltzman Decl. ¶ 47). Defendant also has expended substantial amounts of time, energy and resources in connection with the litigation, and unless this settlement is approved, will be forced to continue to do so.  Defendant has, therefore, agreed to settle in the manner and upon the terms set forth in the Settlement Agreement.

## B.    The Settlement Has No Obvious Deficiencies.

The proposed settlement has no obvious deficiencies.  Under the terms of the settlement, Defendant will make a single, non-reversionary payment of $21,000,000.00. The settlement provides no preferential treatment for Plaintiffs or other Class Members.  Plaintiffs will receive distributions from the settlement proceeds calculated in the same manner as the distributions to other Class Members. In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

Throughout this litigation, Plaintiffs have argued that Defendant should be

liable for all claims raised in the operative complaints. Defendant, on the other hand, has steadfastly maintained that it paid its employees properly and fairly under California law.  This settlement represents a substantial recovery for the Class, and a well-crafted compromise of the divergent positions of the parties.  Further, the settlement has been reached after considerable negotiation, involving the efforts of a highly experienced mediator.  Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing Plaintiffs' claims and Defendant's defenses.

## VI.    NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to Class Members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Here, the parties have agreed upon a Notice which will be mailed to all last known addresses in the Defendant's records, updated as necessary.  This is the most efficient and effective method for notifying class members.

As for the content of the notice, the proposed Notice meets all of the criteria set forth in Rule 23(c)(2).  It informs prospective class members of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses, and the settlement class period; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule23(c)(3).  It also informs them of their right to object, and how to do so.  Plaintiffs ask that the Notice be approved.

## VII.  CLAIMS ADMINISTRATION

The Parties have agreed to the appointment of CPT Group, Inc. as the Settlement Administrator.  CPT is an experienced class administration company, and has acted as claims administrator in numerous wage and hour cases throughout the

23

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

country. (Saltzman Decl. ¶ 28).  CPT has provided an estimate that its expenses will not exceed $120,000.00, for all the settlement administration tasks.

## VIII.   ATTORNEYS' FEES AND COSTS

The Settlement Agreement contemplates that Class Counsel will apply to the Court for an award to be paid from this common fund, in an amount not to exceed one third (1/3) of the Settlement Amount, as well as costs and expenses not to exceed $150,000.00. Collectively, the various Plaintiffs' Counsel have spent over seven thousand (7,000) hours for a combined lodestar that will be in excess of $4,250,000.00. (Saltzman Decl. ¶ 48). Although only preliminary, the estimates provided by Plaintiffs' Counsel demonstrate that the final lodestar, plus a very modest multiplier of only about 1.6, will equal the percentage of the fund request of one-third of the total non-reversionary fund recovered for the class. The total hours expended also demonstrate the incredible amount of resources and time devoted by counsel to litigate and reach the settlement herein, all the while working on a contingency fee basis and risking no recovery at all.

The request for this award is clearly set forth in the proposed Notice. Class Counsel shall also file a motion for attorneys' fees and costs and request for Representative Plaintiffs' Service Awards so as to timely apprise Class Members as to the manner and nature of the fees and costs incurred before the Response Deadline.

Class Counsel recognize that the "benchmark" for fee awards in this district is 25%.  In this case, at the appropriate time in connection with the motion for approval of attorneys' fees, counsel will explain the many reasons why this settlement justifies the additional amount requested, including consideration of the long and winding path followed to reach this settlement, the critical importance of this case and the published decision of the Ninth Circuit issued herein, the very large settlement payment, the average amounts being awarded especially when considered from the "full time equivalent' employee perspective, and the fact that the settlement involves a completely non-reversionary payment under which absolutely no claim forms of

24

1  any kind are required of any of the class members.  At this time, it is requested only

2  that the Court preliminarily approve the one third fee request so that it may be

3  included in the Notice to be mailed to the class members, so that they may comment

4  on that aspect of the settlement should they so desire.

5  **IX.  SERVICE AWARD FOR NAMED PLAINTIFFS**

6      The *Abdullah* Plaintiffs will each seek Service Awards of $15,000.00 each, and

7  the representative *Stone* Plaintiff shall seek a Service Award of $5,000.00. The

8  request for this award is properly disclosed in the proposed Notice.  "[N]amed

9  plaintiffs… are eligible for reasonable incentive payments." *Staton v. Boeing Co.*,

10  327 F.3d 938, 977 (9th Cir. 2003).  The district court must evaluate individual awards

11  using "relevant factors includ[ing] the actions the plaintiff has taken to protect the

12  interests of the class, the degree to which the class has benefitted from those

13  actions,…the amount of time and effort the plaintiff expended in pursuing the

14  litigation…and reasonabl[e] fear[s of] workplace retaliation." *Id.*, citing *Cook v.*

15  *Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).   Service Awards should also

16  compensate for risks taken, such as possible future retaliation, discrimination, trouble

17  finding employment, and significant financial risk.

18      Here, the Class Representatives were not simply bystanders in the prosecution

19  of this Action.  From the time that the action was first brought to the attention of

20  counsel and the representatives met with them, through the present, they have been

21  actively involved in providing information and evidence. (*See* Saltzman Decl. ¶ 32).

22  The same is true of Mr. Stone, who brought the PAGA action that has added to the

23  total recovery.  The Class/PAGA Representatives were always available to consult

24  with, and regularly did consult with counsel. (*Id.*).  The Class/PAGA Representatives

25  were also actively involved in discussions regarding the resolution of this matter and

26  approved the Settlement terms on behalf of themselves and the Class Members. (*Id.*).

27  Moreover, the Class/PAGA Representatives will also be called upon to agree to

28  releases of a broader scope than that required of the Class Members.  Finally, in

25

1  taking the lead for the benefit of the Class Members, these representatives have

2  exposed themselves to the possibility of facing problematic hiring in the future from

3  any other potential employers who might do simple "Google" searches of all job

4  applicants, and who might therefore learn that they stood up to a prior employer by

5  filing a class action.

6        The named Plaintiffs will file their motion for this enhancement in a timely

7  manner such that Class Members will have access to the motion for at least fourteen

8  (14) day prior to the deadline for them to decide whether to object or opt out.

9  **X.    THE REST BREAK AND OFF THE CLOCK CLAIMS SHOULD BE**

10      **PRELIMINARILY CERTIFIED FOR SETTLEMENT PURPOSES**

11        Most of the claims subject to this proposed settlement were previously certified

12  by the Court in its original certification order issued on January 11, 2011.  Two

13  claims now being settled, the rest break and the off the clock claims, were denied

14  certification at that time.  For purposes of this global settlement, and to afford the

15  Defendant the broad litigation relief and peace it seeks by way of the very substantial

16  settlement payment agreed to herein, the Parties have agreed to include those claims

17  within the settlement parameters, and have bargained for those claims, as valued

18  above.  Accordingly, for the reasons outlined here, the parties seek preliminary

19  certification of the rest break and off the clock claims, which have been included in

20  the class definition referred to throughout this motion.  Recognizing the fact that the

21  original class members who received class notice in 2015 as described above would

22  not have had the opportunity to opt out of these two claims, they are being provided a

23  class notice which enables them to opt out of these claims, but still includes them in

24  the settlement of the claims previously noticed to them.  As for those class members

25  who first became employees and thus putative class members following the original

26  notice being mailed in 2015, they will be receiving a second version of the class

27  notice, attached to the Saltzman declaration as Exhibit 2, which entitles them to opt

28  out of object to the entire settlement, since this is their first notice of the same.

26

**A.    Fed.R.Civ.P. 23 (a) Requirements Are Met for the Settlement Class**

Rule 23 plaintiffs must show the four requirements of Rule 23(a) - (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. Cal. 2010) as well as one of the requirements of Rule 23(b).  In this case, the Parties agree to certification of the Settlement Class, for settlement purposes, under Rule 23(b)(3) which has the added requirement of "predominance." *Id.*

1.    Numerosity

Defendant's records reveal that there are over 5,000 class members in the four-year look back period for the two claims addressed herein, such that numerosity is easily established. (Saltzman Decl. ¶ 46).

2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The Ninth Circuit has held that commonality exists "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. Cal. 2001).

Here, Plaintiffs challenge Defendant's company-wide practice of allegedly not providing compliant rest breaks to the guards, and of requiring off the clock travel time on the guards, thus triggering unpaid time.  These alleged practices result in common questions as to the effected class members, well suited to certification.

These common issues satisfy Rule 23(a)(2)'s requirements.  *See, e.g.*, *Tierno v. Rite Aid Corp.*, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) (certifying a class of retail store managers with common wage and hour claims).

3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal.

27

2010). That test is easily met here, for all the reasons stated.

### 4.   The Adequacy Requirements Are Satisfied

Adequacy was already found by the Court when it originally certified the other claims in the case.  That finding can only have been reinforced since then by virtue of the ability of Class Counsel and the Representatives to see the case through the appellate proceedings, the post-certification discovery and merits battles and reach the point of now presenting a proposed non-reversionary settlement in the amount of $21,000,000.00. They should once again be found "adequate" without question.

## B.   The Fed.R.Civ.P 23(b) Standards Are Satisfied

### 1.   Common Issues Predominate

In addition to the Rule 23(a) requirements, a district court must also find that common issues of law or fact "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The proposed Class Members in this case are sufficiently cohesive to warrant adjudication by representation. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436 (2013).

***The Rest Break Claims*** – The California Supreme Court in *Augustus v. ABM Security*, (2016) 2 Cal. 5th 257, a very recent decision, directly addressed and approved of certification and liability of rest break claims in regard to security guards.  In that case, the guards were required to carry pagers with them throughout their rest breaks, with the Court then finding that no lawful rest breaks could occur under those facts.  While Plaintiffs in this case cannot claim that very limiting fact exists, it was and is alleged herein that the freedom of movement of the guards was restricted during their rest breaks.  There was no one available to "spell" them, so if they left their post, the post was effectively left unguarded.  This put immense pressure on the guards to stay at their posts during the supposed rest breaks, such that the Supreme Court's logic in the *Augustus* case can certainly be said to apply.

Accordingly, at the time this matter went to mediation, Plaintiffs advised that if the case did not settle, they intended to seek to have the rest breaks re-visited for

28

certification purposes, hoping to bring that claim back in.  Thus, that claim was rolled in for the most recent four years, thus setting aside the entire question of whether or not a renewed certification would "relate back" and enabling its resolution.

***The Off The Clock Claims*** - Plaintiffs alleged unpaid off the clock time for time spent by Class Members when travelling to/from worksites during their shifts.  It was learned in discovery that in fact this was a rare occurrence, but to the extent that it did occur, it is certainly a just and certifiable claim, although manageability at trial could be difficult given the lack of repeated events.  But as "manageability" for trial purposes, as discussed below, can be overlooked when addressing certification for "settlement purposes", it is submitted that it is fully appropriate to certify this claim for settlement, and to include it in the scope of the settlement.

### 2.  The Class Action Device Is Superior to Other Available Methods of Adjudication

The class action device proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Provisional certification of these two claims will allow them to be fairly, adequately, and efficiently resolved at this time, in conjunction with the other certified claims.  As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages.  *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019-20 (9th Cir. 1998).  These claims " 'would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery, " *Id.* at 1023, especially where the primary claims are being settled and released.  Standing alone, these two claims are just not likely to ever be asserted.

### 3.  No Manageability Issues Preclude Certification

Finally, no issues of manageability would preclude certification of these two additional claims for settlement. A court faced with a request for a settlement-only class need not inquire whether the case would present problems of trial management, even though other requirements under Rule 23 must still be satisfied.  *See, e.g.*,

*Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5 (N.D. Cal. 2013).  Given the settlement, no trial will occur and thus trial management is not a consideration.

## XI.   CONCLUSION

The parties have reached this settlement following extensive litigation and arm's-length negotiations.   Plaintiffs request that the Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, and any additional relief as this Court should deem proper.

DATED:  June 23, 2017                    **MARLIN & SALTZMAN, LLP**

By:   s/  Stanley D. Saltzman
         Stanley D. Saltzman
         Cody R. Kennedy
         Attorneys for Plaintiff
         and Plaintiff Class

30

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** was filed electronically with the Clerk of Court at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record on the 23rd day of June, 2017.


By:   s / Stanley D. Saltzman
Stanley D. Saltzman

Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)