**MARLIN & SALTZMAN**
Stanley D. Saltzman, Esq. (SBN 90058)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301-1555
Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081
ssaltzman@marlinsaltzman.com
ckennedy@marlinsaltzman.com

**LAW OFFICES OF PETER M. HART**
Peter M. Hart, Esq. (SBN 198691)
Peter Choi, Esq. (SBN 249482)
12121 Wilshire Blvd., Suite 205
Los Angeles, California 90025
Telephone:  (310) 478-5789
Facsimile:   (509) 561-6441
phart@msn.com
pchoi.loph@gmail.com

Attorneys for Plaintiffs Abdullah, *et al*., and the Class
(additional counsel listed on next page)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMMED ABDULLAH, et al., as an individual and on behalf of all others similarly situated, | Case No. CV 09-09554 PSG(Ex); Case No. CV 15-02366 PSG(Ex) *consolidated with* Case No. CV-00984 PSG(Ex) (Assigned to Hon. Philip S. Gutierrez) |
| Plaintiffs, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| U.S. SECURITY ASSOCIATES, INC., a Corporation, and DOES 1 to 10, inclusive, | |
| Defendant. | DATE:      December 4, 2017 TIME:      1:30 p.m. CTRM:     6A |

***Additional Plaintiffs' Counsel***

Kenneth H. Yoon, Esq. (SBN 198443)
**LAW OFFICES OF KENNETH H. YOON**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone:   (213) 612-0988
Facsimile:    (213) 947-1211
kyoon@yoon-law.com

Larry W. Lee, Esq.  (SBN 228175)
**DIVERSITY LAW GROUP**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Telephone:   (213) 488-6555
Facsimile:    (213) 488-6554
lwlee@diversitylaw.com

Peter R. Dione Kindem, Esq. (SBN 95267)
**THE DION-KINDEM LAW FIRM**
21550 Oxnard St., Suite 900
Woodland Hills, California 91367
Telephone: (818) 883-4900
Facsimile: (838) 883-4902
Peter@Dion-KindemLaw.com

ii

**TO:   ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2017, at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom No. 6A in the above entitled courthouse located at 350 W. First Street, Los Angeles, California 90012, Plaintiffs, on their own behalf, and on behalf of the certified Class, will move for final approval of a class wide settlement reached with Defendant U.S. Security Associates, Inc. ("Defendant," or "USSA").  Defendant does not oppose this Motion.

This motion is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement, the following memorandum of points and authorities, the Class Action Settlement Agreement ("Settlement") filed with Plaintiffs' Motion for Preliminary Approval (Dkt No. 186-2), the pleadings and the papers on file in this action, any matters of which the Court may take judicial notice, and upon such further evidence, both documentary and oral, as may be presented or considered by the Court in connection with the hearing of this motion.

DATED:  November 3, 2017                  **MARLIN & SALTZMAN, LLP**
                                          **LAW OFFICES OF PETER M. HART**


                                          By:  s/  Stanley D. Saltzman
                                               Stanley D. Saltzman
                                               Cody R. Kennedy
                                               Attorneys for Plaintiffs and the Class

# **TABLE OF CONTENTS**

I.      INTRODUCTION/BACKGROUND...................................................................1

II.     THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED
        TO AND SUCCESSFULLY CARRIED OUT .................................................3

        A.    Dissemination of Notice Packets...................................................3

        B.    Motion for Attorneys' Fees, Costs and Incentive Awards.....................3

        C.    There Have Been Only Seven Objections, and Only Ten
              Exclusions, Received ..........................................................4

        D.    Contacts by Class Members with the Settlement Administrator ...........4

III.    THE SETTLEMENT TERMS ...................................................................4

IV.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.............5

        A.    Standard of Review .........................................................5

        B.    The Settlement Notice Comports with FRCP Rule 23 and Due
              Process........................................................................7

        C.    The Settlement Is the Result of Good-Faith, Arm's-Length
              Negotiations....................................................................8

        D.    The Settlement Is Fair, Reasonable and Adequate .........................10

              1.    The Strength of Plaintiffs' Case Weighs in Favor of
                    Settlement Approval ..............................................10

              2.    The Risk, Expense, Complexity, and Likely Duration of
                    Further Litigation Weigh in Favor of Settlement Approval ......11

              3.    The Risk of Maintaining Class Action Status through Trial ......12

              4.    The Amount Offered in Settlement Supports Final Approval....12

              5.    The Extent of Discovery Completed and the Stage of the
                    Proceedings Weigh in Favor of Settlement Approval ...............13

              6.    The Views of Experienced Counsel Support Settlement
                    Approval........................................................14

              7.    The Government Participant Factor Favors Approval of the
                    Settlement......................................................15

              8.    The Reaction of the Class Supports Final Approval .................16

V.      CONCLUSION.........................................................................17

iv

1

2

## **<u>TABLE OF AUTHORITIES</u>**

3

**Federal Cases**

4

5

*Adoma v. University of Phoenix, Inc.,*
    2012 WL 6651141 (E.D. Cal. 2012) ...................................................10

6

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245  (N.D. Cal. 2015) ......................................................16

7

8

*Boyd v. Bechtel Corp.,*
    485 F.Supp. 610 (N.D.Cal.1979) ........................................................15

9

*Campbell v. First Inv'rs Corp.,*
    2012 WL 5373423 (S.D. Cal. 2012) ..................................................11

10

11

*Chu v. Wells Fargo Invs., LLC,\*
    2011 WL 672645 (N.D. Cal. 2011) ....................................................15

12

13

*Churchill Vill. L.L.C. v. GE,*
    361 F.3d 566 (9th Cir. 2004) ................................................ 8, 10, 16

14

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir.1992) ............................................................15

15

16

*Eddings v. Health Net, Inc.,*
    2013 WL 3013867 (C.D. Cal. 2013) ..................................................11

17

*Garcia v. Gordon Trucking, Inc.,*
    2012 WL 5364575 (E.D. Cal. 2012) .............................................. 9, 15

18

19

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................... 10, 13

20

21

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ..............................................................9

22

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir.2000) ..............................................................14

23

24

*Kirkorian v. Borelli,*
    695 F. Supp.446 (N.D. Cal. 1988) .....................................................14

25

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ...........................................................13

26

27

*Lopez v. Bank of Am., N.A.,*
    2015 WL 5064085 (N.D. Cal. 2015) ..................................................14

28

Plaintiffs' Notice of Motion/Motion for Final Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

*McKenzie v. Fed. Exp. Corp.*,
    2012 WL 2930201 (C.D. Cal. 2012) ............................................................12

*Nielson v. The Sports Auth.*,
    2013 WL 3957764 (N.D. Cal. 2013) ...............................................................9

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................. passim

*Ogbuehi v. Comcast of California/ Colorado/ Florida/ Oregon, Inc.*,
    2015 WL 3622999 (E.D. Cal. 2015) ...............................................................9

*Perez v. Tilton*,
    2006 WL 2433240 (N.D. Cal. 2006) ...............................................................6

*Ross v. Trex Co., Inc.*,
    2013 WL 6622919 (N.D. Cal. 2013) ............................................. 10, 13, 16

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) .........................................................................7

*Singer v. Becton Dickinson & Co.*,
    2010 WL 2196104 (S.D. Cal. 2010) .............................................................15

*Steinfeld v. Discover Fin. Servs.*,
    2014 WL 1309352 (N.D. Cal. 2014) .............................................................11

*Torrisi v. Tuscon Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................. 6, 10

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .........................................................................5

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .........................................................................5

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................10

*Zamora v. Ryder Integrated Logistics, Inc.*,
    2014 WL 9872803 (S.D. Cal. 2014) .............................................................15


**State Cases**

*Brinker Restaurant Corp. v. Sup. Ct.*,
    53 Cal. 4th 1004 (2012) ................................................................................10

**Statutes and Rules**

FRCP 23 ............................................................................................5, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Notice of Motion/Motion for Final Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION/BACKGROUND

Plaintiffs, individually and on behalf of the certified and conditionally certified class of security guards employed by Defendant U.S. Security Associates, Inc. (USSA) seek this Court's final approval of the totally non-reversionary $21,000,000.00 settlement ("Settlement") of the consolidated Abdullah and Stone class and PAGA actions, which Settlement this Court preliminarily approved on August 14, 2017.  Docket No. 190.

Plaintiffs are pleased to inform the Court that:

- 22,131 Class Members were mailed the Court approved Notice Packets (Dancy Dec. ¶9);
- Of the Notice Packets that were mailed, following the original mailing and all re-mailings, only 408 have ultimately been returned as undeliverable, a truly extraordinary and successful notice mailing result (Dancy Dec. ¶12);
- There have been only 6 "objections" received, none of which can be considered "substantive" in any manner, in that they are all really more in the nature of class members simply writing letters sharing their own grievances relating to the Defendant, and all of which are addressed fully in the Declaration of Cody R. Kennedy filed herewith. (Kennedy Dec. 2-16)
- There are have been only 10 requests for exclusion to the Settlement out of the 22,131 Notice Packets mailed, again constituting an extraordinarily positive class member election to participate at a 99.95% rate (Dancy Dec. ¶14, 17).

In short, the data reveals that the Notice program was highly successful and that the Settlement has been overwhelmingly endorsed by the Class.

This Settlement provides that Defendant will pay $21,000,000.00 to settle the claims asserted by the Representative Plaintiffs on behalf of the class, as well as the PAGA claims asserted in the *Stone* action. Since the settlement is entirely non-

1

reversionary, the entire $21,000,000 will be paid out as provided in the preliminarily approved Settlement Agreement. Furthermore, no claim forms are required of any Class Member.  Following Final Approval, Settlement payments will be mailed to all Class Members, other than the ten (10) who elected to opt out of the Class.

An objective evaluation of the Settlement confirms that it is fair, reasonable and adequate.  The proposed settlement is the product of arm's-length negotiations between the Parties.  In fact, resolution was not reached until the fourth full mediation session, such that it can clearly be said that the Parties thoroughly thrashed out the issues over the course of numerous mediations, over a several year period.  The initial two mediations were held before Mark Rudy, Esquire, one of California's foremost mediators in the area of employment class actions. The first of these mediations occurred prior to Plaintiffs filing their motion for certification. The second session took place after the district court had granted certification, but before the appeal of that ruling.  The third mediation was supervised by Hunter Hughes, Esquire, another prominent nationwide class action mediator, and was held following the issuance of the Ninth Circuit's decision, but while the Defendant's petition for certiorari was pending before the U.S. Supreme Court. In effect, mediations were attempted at every logical and critical juncture of the case history.  (Saltzman Decl. ¶¶ 22-24).  As set forth thoroughly in Plaintiffs' Preliminary Approval Motion and in the pending Motion for Approval of Fees, Costs and Incentive Awards, and the Saltzman declaration in support thereof, the case was thoroughly investigated and litigated prior to the Parties reaching this settlement.

The Settlement provides Class Members with valuable relief for their claims, particularly when viewed against the increasing difficulties encountered by Plaintiffs in wage and hour cases in the last several years, during which time the standards applied by courts in California and nationally have become ever more stringent. This substantial settlement wholly eliminates the downside risks, of which there were many, of Defendant potentially prevailing on any one of several case dispositive legal

2

defenses (discussed *infra.*), decertification efforts, or eventually at trial.

The Settlement meets the criteria for Final Approval, which are set forth in the *Manual for Complex Litigation*, 4th Ed., as it easily falls within the range of what would be fair, reasonable, and adequate. Thus Plaintiffs respectfully request that the Court grant the requested Final Approval.

## II.   THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT

### A.   Dissemination of Notice Packets

Pursuant to the Preliminary Approval order, CPT Group, Inc. was appointed to be the Settlement Administrator. The Settlement Administrator has complied with this Court's orders concerning dissemination of the Notice Packet. (Dancy Decl.¶¶ 2-14). As approved by the Preliminary Approval Order, two slightly different notices were disseminated, depending on whether the class member had or had not received the original Notice of Certification and the opportunity to opt out, following the Ninth Circuit's affirmation of the certification of the claims at the time of the motion for certification. Those who had not been employed prior to the date of the original certification, including the "extended" date of that certification, received the alternate Notice of Settlement and Conditional Certification, allowing them a full opportunity to opt out of the class and the settlement.

In addition, the Settlement Administrator operated a toll-free telephone number for Class Members to call with inquiries concerning the Settlement and created and operated a website that contained the Settlement details along with relevant documents. (*Id.* at ¶¶ 3, 16). The Settlement Administrator has provided the Court with a full report of its activities as set forth in the Dancy declaration.

### B.   Motion for Attorneys' Fees, Costs and Incentive Awards

Pursuant to the order granting Preliminary Approval, Class Counsel were ordered to file their attorneys' fees motion by Nov. 3, 2017. That motion is being timely filed in conjunction with the instant motion for final approval, and will be

3

uploaded to and posted on the case website maintained by CPT Group, Inc., at the website listed in the Notices to the class members.

### C.   There Have Been Only Seven Objections, and Only Ten Exclusions, Received

The Objection/Exclusion Deadline was Octoober 19, 2017.Of the approximately 22,000 class members, only six "objections" were submitted, and that term is used in a very broad sense.  In reality, as discussed hereafter, none of the objections state any actual reasons or true objections, as that term is understood in class action law, to attack or complain about the fairness of the settlement.

Additionally, as declared to by Ms. Dancy, (at ¶ 14) only ten (10) valid exclusion requests have been received by the Administrator.  This represents an overall participation rate of 99.95%. (Dancy Decl. ¶ 17). For a Class of this size, this is a shockingly high participation rate, and speaks volumes as to how favorably the response of the Class has been to the Settlement.

### D.   Contacts by Class Members with the Settlement Administrator

Finally, the availability of the Toll Free Settlement number (used by more than 1,000 callers) and the Settlement Website enhanced the effectiveness of the notice procedures implemented for this action.  (Dancy Decl. ¶¶ 15-17).

## III.   THE SETTLEMENT TERMS

The Settlement Terms and key points therein have been fully described in the previously granted Motion for Preliminary Approval, in the Order granting that Approval, and again in the pending Motion for Approval of Fees, Costs and Incentive awards on file at this time.  In order to avoid undue duplication, the terms will not be repeated in detail herein.  Suffice to say that the critical terms are the substantial amount - **$21,000,000.00**; that the settlement is totally **non-reversionary**; that absolutely **no claims forms** are required of the Class Members; that **98% of the Notice Packets were successfully delivered** by mail; and that there was a **99.95% participation rate** among the class members who received said packets.  Gross and

4

base level average settlement allocations, based as they are on workweeks of the respective Class Member drivers, will average $948.90 ($21,000,000 / 22,131 class members), with a potential to reach as high as $9,130.00 for full time employees (FTE's) who worked for Defendant throughout the entire class period.  Such results are impressive, and no doubt explain the low level of objections, and the equally low level of opt-outs.

Additional relevant and noteworthy terms include that (1) The Settlement Administrator will calculate settlement shares based on the total Compensable Work-shifts for all Settlement Class Members as a percentage of as against the total number of work-shifts by all the Settlement Class Members; (2) The settlement allocates $500,000.00 to resolve the PAGA claims, with 75% of that amount to be paid to the LWDA, a sum much higher than the allocations regularly seen in other class action settlements; (3) Settlement Class Members will release Defendant from all claims based upon the facts alleged in the *Abdullah* second amended complaint and the *Stone* complaint; and (4) additionally, the Class Representatives will generally release all claims against Defendant, part of the broader consideration demanded of them by Defendant, and thus included in the calculation of the incentive awards requested.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.   Standard of Review

Class actions readily lend themselves to compromise because of the difficulties of proof, the risks and exposure on both sides of the litigation, and the extended time to resolution.  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

FRCP 23(e) requires judicial review of all class settlements.  In deciding whether to approve a settlement under Rule 23(e), the Court must find that the

5

proposed settlement is "fair, adequate and reasonable."  The district court exercises its sound discretion in approving a settlement.  *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  In exercising this discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has clearly defined the limits of the inquiry to be made by the court in the following manner:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

> *Id*.

Moreover, the Court's inquiry into whether a proposed settlement is fair, reasonable and adequate is relatively less probing where, as here, the parties settle *after* a class is certified by the Court.  *Cf. Perez v. Tilton*, No. C 05-05241 JSW, 2006 WL 2433240, at *2 (N.D. Cal. Aug. 21, 2006) (White, J.) (Where "the parties reach a settlement before a class is certified, 'a more probing inquiry' into whether a proposed settlement is fair, adequate, and reasonable is required").  Here, the case has not only been certified by the Court, but has been affirmed by the Ninth Circuit, and the case has also had extensive and near trial ready discovery on all liability issues, on all damages issues, on all expert issues, including the depositions of the experts (four in total) for both sides.

/ / /

6

**B.     The Settlement Notice Comports with FRCP Rule 23 and Due Process**

In this context, FRCP 23 and due process call for the best notice practicable, reasonably calculated under the circumstances. This has clearly been satisfied here. All Class Members were apprised of the pendency of the class action and proposed Settlement, and given the chance to be heard. *See* FRCP Rule 23(c and e); *see also Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

In the Preliminary Approval Order, this Court approved the Settlement Notice(s) as to both form and content. *See* Preliminary Approval Order, (ECF Doc. No. 190).  It also found that the regular mailing of the Settlement Notices to Class Members according to the contact information provided by Defendant, as updated by the Settlement Administrator using standard update and trace techniques, substantially met the requirements of Rule 23 and due process, was the best notice practicable under the circumstances, and would constitute due and sufficient notice.

The Parties and the Settlement Administrator dutifully followed the schedule for the settlement process approved by the Court—including dissemination of the Settlement Notices.  Defendant timely provided the Administrator with the Class list. As already noted above in the Dancy declaration, the Administrator mailed the Settlement Notice to the 22,131 individuals on the Class list by September 19, 2017; thereafter, following forwarding and re-mailing of undelivered Notices as warranted, only 399 class notices out of 22,131 were ultimately not delivered (1.8%).   Thus, the Notice procedure was successful in delivering more than 98% of all the Notice Packets, an extraordinary result, especially when considering that the Class period extends back to July 1, 2007, over ten years ago.  As further declared by Mr. Dancy, the Administrator established a secure settlement website containing information about the Settlement, including posting of the Notice, the Settlement Agreement, and now the fee motion in its entirety, as ordered by the Court.  Finally, the Administrator has maintained a toll-free number and provided information via telephone to Class

1  Members inquiring about the proposed Settlement, which was utilized by over 1,000
2  class members.

3  The Settlement Notices informed Class Members of the nature of the
4  Settlement and (1) of their right to receive their Settlement payment; or (2) of their
5  right to opt-out of the Settlement for those who had not previously had that
6  opportunity; or (3) of their right to object to the Settlement or to Plaintiffs' motion for
7  attorneys' fees, costs, and incentive awards.  Class Members had until October 19,
8  2017, to opt out of the Settlement Class for those who were receiving the first notice
9  of that right, or to object to the proposed Settlement or the fees, costs and incentive
10  award requests.

11  In short, the manner in which notice was provided was the best notice
12  practicable and reasonably calculated under the circumstances to apprise Class
13  Members of the class action and Settlement and to give Class Members the chance to
14  be heard.  *See Churchill Vill. L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  Given
15  the positive results of the Notice mailing referenced above, resulting in more than
16  98% of the Notice Packets having been successfully delivered, with so few
17  exclusions and really no substantive objections, the mailing met or exceeded the
18  requirements of Rule 23 and satisfies due process.

19  **C.    The Settlement Is the Result of Good-Faith, Arm's-Length**
20  **Negotiations**

21  The proposed settlement here is the product of arm's-length negotiations
22  between the Parties.  In fact, resolution was not reached until the fourth full mediation
23  session, such that it can clearly be said that the Parties thoroughly thrashed out the
24  issues over the course of numerous mediations, over a several year period.  The first
25  two mediations were held before Mark Rudy, Esquire, one of California's foremost
26  mediators in the area of employment class actions. The first of these mediations
27  occurred prior to Plaintiffs filing their motion for certification. The second took place
28  after the district court had granted certification, but before the appeal of that ruling.

8

The third mediation was supervised by Hunter Hughes, Esquire, another prominent nationwide class action mediator, and was held following the issuance of the Ninth Circuit's decision, but while the Defendant's petition for certiorari was pending before the U.S. Supreme Court. Clearly, the timing of each of the mediations were strategically selected to maximize possible resolution at every logical and critical juncture of the case history.  (Saltzman Decl. ¶¶ 22-24). *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011); *see also Nielson v. The Sports Auth.*, No. C 11-4724 SBA, 2013 WL 3957764, at *5 (N.D. Cal. July 29, 2013) ("the settlement resulted from non-collusive negotiations; i.e., a mediation before . . . a respected employment attorney and mediator"); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) ("participation of an impartial mediator. . . " is "evidence of an informed, arm's length negotiation between the parties and the absence of any collusion"); *Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*, No. 2:13-CV-00672-KJM, 2015 WL 3622999, at *9 (E.D. Cal. June 9, 2015) ("[T]he settlement agreement is the product of arms-length mediation involving experienced counsel before an experienced mediator").

Moreover, the Settlement bears no signs of collusion or irreconcilable conflicts. Instead, it follows extensive arms-length negotiations. The Settlement Class Members will receive their monetary awards from a totally non-reversionary common fund Settlement.[1] Plaintiffs' counsel will not receive a disproportionate share of the Settlement or any undisclosed payment of attorneys' fees. Clearly, the interests of Plaintiffs' counsel coincide precisely with the interests of the certified Class.

In sum, the Settlement Agreement has been entered into in good faith

---

[1] The parties recognize the slight distinction relating to the payment of employee side payroll taxes out of the fund, which will be resolved by way of the Class Counsel not claiming any fees on the amount needed to make those payments.  This is discussed in detail in the fee motion filed contemporaneously herewith, and in the Saltzman declaration.

Plaintiffs' Notice of Motion/Motion for Final Approval of Class Action Settlement
Case No. CV 09-09554 PSG(Ex)

compliance with the Federal Rules of Civil Procedure, due process, and other applicable laws.  It was reached only after arms'-length negotiations without collusion and overseen by an independent mediator, warranting a presumption in favor of approval.  *See Officers for Justice*, 688 F.2d at 625; *Ross v. Trex Co., Inc.*, No. 09-CV-00670-JSW, 2013 WL 6622919, at *3 (N.D. Cal. Dec. 16, 2013).

### D.     The Settlement Is Fair, Reasonable and Adequate

In evaluating the fairness, reasonableness and adequacy of a class settlement, courts consider and balance a number of factors under Rule 23, including:  "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (*citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)); see also *Churchill Vill. L.L.C.*, 361 F.3d at 575-76.

These criteria demonstrate that the Settlement warrants this Court's approval.

### 1.     The Strength of Plaintiffs' Case Weighs in Favor of Settlement Approval

As stated above, there can be no debate that in the many years this case has been pending, several critical decisions have dramatically altered the legal landscape in employment class actions, and class actions in general.  The district and appellate courts have certainly taken note of the same.  "[T]here is little doubt that, as a result of" decisions such as *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and *Brinker Restaurant Corp. v. Sup. Ct.*, 53 Cal. 4th 1004 (2012), "plaintiffs face increased difficulties in winning wage-and-hour class action lawsuits."  *Adoma v. University of Phoenix, Inc.*, 2012 WL 6651141, at *7 (E.D. Cal. Dec. 20, 2012).

In this case, plaintiffs also faced additional difficulties due to the novel issues

10

of laws raised surrounding on-duty meal breaks and the "nature of the work" exception. Throughout, Defendant vigorously litigated the action. *See Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013) (finding that, in a complex wage and hour class action where defendant engaged in vigorous litigation, this factor weighs in favor of settlement approval). Plaintiffs case was certainly a difficult one. If Defendant were to prevail on any one or more of its defenses at summary judgment, trial, or appeal, Plaintiffs likely would recover little or nothing. Given the constantly evolving state of the law and the constant threats to the maintenance of the claims on a class action basis, the settlement now presented for final approval is even more exceptional. The Settlement offers substantial benefits to the Class Members, despite the possibility that the case could have been damaged significantly by a contrary decision upon summary judgment, trial, or appeal.

This factor weighs heavily in favor of approval.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement Approval

As noted, the case presented novel issues as to the propriety of on-duty meal breaks, and the requirements to meet the "nature of the work" exception. Continued litigation of these issues would be lengthy, costly and uncertain. Fortunately, the non-reversionary Settlement at hand provides significant cash benefits, without any further delay.

The Settlement provides these benefits now. See *Campbell v. First Inv'rs Corp.*, No. 11-CV-0548 BEN WMC, 2012 WL 5373423, at *5 (S.D. Cal. Oct. 29, 2012) (recognizing that the process of establishing entitlement to damages and the potential for delay and appeals weighed in favor of settlement approval); see also *Officers for Justice*, 688 F.2d at 625; *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 31, 2014) (White, J.).

The issues discussed in Section 1 above apply equally to this factor. Accordingly, the risks of continued litigation, combined with the expense,

11

complexity, and likely duration of further litigation, also weigh heavily in favor of final approval of the Settlement.

### 3.   The Risk of Maintaining Class Action Status through Trial

Plaintiffs succeeded in obtaining class certification.  They then successfully defended that ruling before the Ninth Circuit, an *en banc*  request for review, and defeated a petition for certiorari to the Untied States Supreme Court.  At the time of settlement, the Defendant had pending before the Court a motion to decertify the Class.  The Parties also had cross motions for summary judgment fully briefed and pending for hearing. While Plaintiffs certainly believe that the Court correctly certified the substantial majority of claims, "settlement avoids all possible risk" of later suffering the loss of all claims through decertification. "This factor therefore weighs in favor of final approval of the settlement." *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012).

### 4.   The Amount Offered in Settlement Supports Final Approval

Defendant will pay $21,000,000.00, less approved deductions, to 22,123 current and former drivers.  The Settlement embodies a sizeable recovery for the Class and a meaningful share of any actual losses that may have been recovered through trial, especially where the primary claim related solely to on-duty meal breaks.   The claim by claim evaluation set forth in the motion for preliminary approval is respectfully incorporated herein, and fully addresses the details of all the claims, values and the strength of the settlement.   The proposed Settlement will provide gross allocations to Settlement Class Members that—for full-time equivalent employees working throughout the Class period—could equal as much as about $9,130.00 (less approved deductions), tied to the number of workshifts attributed to each Class Member as a percentage of the total workshifts for all the Class Members.

The contemplated payments to the Class Members are clearly substantial. "[A]s the Ninth Circuit has made clear, the Court's inquiry 'is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free

12

from collusion.'"  *Ross v. Trex Co., Inc.*, No. 09-CV-00670-JSW, 2013 WL 6622919, at *4 (N.D. Cal. Dec. 16, 2013) (White, J.) (*citing Hanlon*, 150 F.3d at 1027). These numbers are highly favorable and a far-cry from a "cash settlement amounting to only a fraction of the potential recovery". See *Officers for Justice*, 688 F.2d at 628 (citation omitted); *see also In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1042 (N.D.Cal.2008) (approving settlement in which class received payments totaling 6% of potential damages).  There are some 22,121 Class Members out of 22,131 on the Class list (excluding the ten opt-outs) who, after all these years of litigation, await final approval and the receipt of their hard-earned settlement payments.

The amount being paid in settlement weighs firmly in favor of final approval.

### 5.  The Extent of Discovery Completed and the Stage of the Proceedings Weigh in Favor of Settlement Approval

When litigation has advanced to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  Here, literally everything other than the trial of the case had been accomplished when the settlement was reached.  Plaintiffs had completed (1) extensive pre-filing investigation; (2) full and complete written discovery; (3) thorough deposition discovery, including depositions of numerous PMQ's produced by the Defendant, depositions of the representative Plaintiffs, and fourteen class member depositions; (4) voluminous certification briefing, and appellate work related thereto; (5) extensive motion practice by the Defendant, constantly seeking to derail the case; (6) cross motions for summary judgment; (7) preparation and exchange of expert reports, and the depositions of four designated experts; and ultimately, (8) several agreed upon mediations, concluding with the final session when the case finally moved forward to settlement that was then agreed upon.

As a result of this virtually constant work over nearly nine years of litigation, the Parties were thoroughly informed regarding all issues, and were able to analyze

13

1   the strengths and weaknesses of their respective positions. Not surprisingly, therefore,

2   there was a copious factual record from which to evaluate the alleged labor

3   violations, the possible damages flowing therefrom, the likelihood of success at trial,

4   as well as the exposures of a judgment to expected post-verdict appeals.  Thus, the

5   proposed Settlement was thoroughly vetted and based on a strong awareness of the

6   case in its entirety.

7        For these reasons, the extent of discovery and the advanced stage of

8   proceedings decisively support final approval of the Settlement.  *See Rodriguez v.*

9   *West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir.2009) (factor weighed in favor of

10  settlement approval where parties had conducted extensive discovery and gone

11  through round of summary judgment motions); *see also In re Mego Fin. Corp. Sec.*

12  *Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (factor weighed in favor of approving

13  settlement where plaintiffs had conducted significant discovery and consulted with

14  experts).

15        **6.    The Views of Experienced Counsel Support Settlement**

16              **Approval**

17        The opinions of experienced counsel offered in support of a settlement should

18  be given considerable weight.  Indeed, our courts recognize that "[a] presumption of

19  fairness, adequacy, and reasonableness may attach to a class settlement reached in

20  arm's length negotiations between experienced, capable counsel after meaningful

21  discovery."  *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *see*

22  *also Lopez v. Bank of Am.*, N.A., No. 10-CV-01207-JST, 2015 WL 5064085, at *5

23  (N.D. Cal. Aug. 27, 2015) ("The recommendations of plaintiffs' counsel should be

24  given a presumption of reasonableness").  In this case, Class Counsel and their co-

25  counsel are highly skilled in class action litigation, as their several declarations filed

26  in connection with both preliminary approval and the motion for fees, costs and

27  incentives, amply demonstrate.  (Re. the motion for preliminary approval, *see*

28  Saltzman Declaration, at Docket No. 186-1; and re. the motion for fees, *see* the

14

Declarations of Saltzman, Hart, Lee, Yoon, Dion-Kindem and Blanchard, all filed herewith.) All counsel have participated in this litigation for many years, they have actively devoted themselves to the steps needed to keep the case moving forward, they have evaluated the pending Settlement at length, and they have concluded that the proposed Settlement offers substantial benefits to Class Members. Simply put, experienced counsel, including lead counsel at Marlin & Saltzman, endorse and support this Settlement, which in turn supports the fairness, adequacy and reasonableness of the Settlement. This factor, therefore, weighs strongly in favor of final approval. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992); *see also Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D.Cal.1979).

### 7. The Government Participant Factor Favors Approval of the Settlement

No government entity participated in this case, but the staggering sum of $500,000 of the Settlement is being allocated to the PAGA claims, with 75% of that amount to be paid to the California LWDA. "Thus, this factor weighs in favor of approval as well." *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13CV2679-CAB BGS, 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014).

The PAGA amount of $500,000 far exceeds those of settlements approved in other cases.[2] Of course, most case settlements do not involve sums as large as $21,000,000.00, so while more money is in play here, the PAGA allocation is still a substantial amount that speaks well of the entire settlement. It provides a strong allocation to the State. Furthermore, PAGA penalties in this case may be duplicative

---

[2] *See, e.g.*, *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA payment of $7,500 to the LWDA out of $6.9 million common-fund settlement); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (finding that $7,500 payment to LWDA out of $3.7 million common-fund settlement "comports with settlement approval of PAGA awards in other cases"); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *2 (S.D. Cal. June 1, 2010) (granting final approval of $1,000,000 settlement with $3,000 PAGA award).

of monies already provided under the Settlement, such that the district court's discretion could ultimately have been exercised so as to severely reduce the possible PAGA penalty, had it been otherwise proven.   Thus, the PAGA allocation here recognizes that a PAGA award is within the Court's broad discretion.

In addition to the LWDA's interest: "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). Defendant sent the required CAFA notices, yet "no state or federal official has raised any objection or concern regarding the settlement." *Id.*

### 8.    The Reaction of the Class Supports Final Approval

"Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *Bellinghausen*, 306 F.R.D. at 258; *see also Ross v. Trex Co., Inc.*, No. 09-CV-00670-JSW, 2013 WL 6622919, at *4 (N.D. Cal. Dec. 16, 2013) (White, J.) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it"); *cf. Churchill Vill.*, 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of 150,000).  This "strong presumption" of fairness arises here.

After due notice to the 22,131 current and former employees identified by the Defendant's records as Class Members (with approximately 1.8% of the notices undelivered), only six persons "objected" to the Settlement.

In reviewing these objections, moreover, it appears that there are in fact no actual complaints as to the fairness, adequacy, or reasonableness of the settlement itself.   These submissions are discussed in full in the Declaration of Cody R. Kennedy, filed herewith.  In sum, there are absolutely no grounds stated as objections to the Settlement, and thus after all these years, literally everyone other than the ten

16

opt-outs are now awaiting their settlement checks.  (*See*, Objections, attached to the Dancy Decl. at Ex. C).

Also demonstrating the high level of support for the Settlement, only ten persons exercised their right to opt-out of the Settlement.  All the remaining Class Members now await receipt of their settlement checks, in many cases substantial amounts.  While the settlement payments will not be in time for this upcoming holiday season, they will certainly help take the financial edge off of many family's celebrations.

Based on all of the foregoing, the reaction of the Class to the Settlement has been overwhelmingly positive, and therefore, this factor strongly favors final approval of the Settlement.

## V.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order and grant the relief requested in this Motion.


DATED:  November 3, 2017            **MARLIN & SALTZMAN, LLP**
                                    **LAW OFFICES OF PETER M. HART**


                                    By:   s/  Stanley D. Saltzman
                                          Stanley D. Saltzman
                                          Cody R. Kennedy
                                          Attorneys for Plaintiffs and the Class

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** was filed electronically with the Clerk of Court at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record on the 3rd day of November, 2017.


By:   s / Stanley D. Saltzman
       Stanley D. Saltzman

---

18