**MARLIN & SALTZMAN**
Stanley D. Saltzman, Esq. (SBN 90058)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301-1555
Telephone:  (818) 991-8080
Facsimile:   (818) 991-8081
ssaltzman@marlinsaltzman.com
ckennedy@marlinsaltzman.com

**LAW OFFICES OF PETER M. HART**
Peter M. Hart, Esq. (SBN 198691)
Peter Choi, Esq. (SBN 249482)
12121 Wilshire Blvd., Suite 205
Los Angeles, California 90025
Telephone:   (310) 478-5789
Facsimile:    (509) 561-6441
phart@msn.com
pchoi.loph@gmail.com

Attorneys for Plaintiffs Abdullah, *et al*., and the Class
(additional counsel listed on next page)

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMMED ABDULLAH, et al., as an individual and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>U.S. SECURITY ASSOCIATES, INC., a Corporation, and DOES 1 to 10, inclusive,<br><br>            Defendant. | Case No. CV 09-09554 PSG(Ex);<br>Case No. CV 15-02366 PSG(Ex)<br>*consolidated with* Case No. CV-00984 PSG(Ex)<br>(Assigned to Hon. Philip S. Gutierrez)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS**<br><br>DATE:        December 4, 2017<br>TIME:         1:30 p.m.<br>CTRM:       6A |

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

***Additional Plaintiffs' Counsel***

Kenneth H. Yoon, Esq. (SBN 198443)
**LAW OFFICES OF KENNETH H. YOON**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone:   (213) 612-0988
Facsimile:    (213) 947-1211
kyoon@yoon-law.com

Larry W. Lee, Esq.  (SBN 228175)
**DIVERSITY LAW GROUP**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
Telephone:   (213) 488-6555
Facsimile:    (213) 488-6554
lwlee@diversitylaw.com

Peter R. Dione Kindem, Esq. (SBN 95267)
**THE DION-KINDEM LAW FIRM**
21550 Oxnard St., Suite 900
Woodland Hills, California 91367
Telephone: (818) 883-4900
Facsimile: (838) 883-4902
Peter@Dion-KindemLaw.com

ii

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2017, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom No. 6A of the above entitled courthouse located at 350 W. First Street, Los Angeles, California 90012, Plaintiffs, on their own behalf, and on behalf of the certified Class, will and hereby do move for (1) an award of attorneys' fees in the total amount of $6,871,113.00 to Plaintiffs' counsel (equal to one-third of the common fund established by the settlement between the parties, less any fees on settlement amounts designated for employer-side payroll taxes); (2) reimbursement of $136,404.28 in expenses incurred by Plaintiffs' counsel; and, (3) incentive awards of $15,000 for each of the three plaintiffs in the Abdullah, - Abdullah, Kimbrough and Aguilar, and $5,000 for plaintiff Stone in the PAGA action.

This Motion is based on the foregoing as well as the contemporaneously filed memorandum of points and authorities and exhibits in support of this Motion, the supporting declarations, all pleadings and other papers on file in this action, any matters of which the Court may take judicial notice, and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

DATED:  November 3, 2017          **MARLIN & SALTZMAN, LLP**
**LAW OFFICES OF PETER M. HART**

By:  _s/  Stanley D. Saltzman_
          Stanley D. Saltzman
          Cody R. Kennedy
          Attorneys for Plaintiffs and the Class

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

# **TABLE OF CONENTS**

I.    STATEMENT OF RELIEF SOUGHT .................................................1

II.   INTRODUCTION ..............................................................................1

III.  BACKGROUND .................................................................................4

    A.    Procedural History ...................................................................4

        1.    Relation of the *Abdullah* and *Stone* Actions .................4

IV.   LITIGATION OF THE *ABDULLAH* MATTER .............................5

    A.    The Settlement Agreement ........................................................7

    B.    Plaintiffs' Counsel's Lodestar ..................................................8

    C.    Litigation and Settlement Administration Costs ......................8

V.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE .......8

    A.    The Requested Fee Award is Reasonable Under the Percentage-of-Fund Method .......................................................................10

        1.    Results Obtained for the Class ..................................11

        2.    The Risks of Litigation ..............................................12

        3.    The Skill Required and Quality of Work by Counsel......14

        4.    The Contingent Nature of the Fee ............................15

        5.    Awards Made in Similar Cases ..................................16

    B.    The Requested Fee Award is Also Reasonable Using the Lodestar Cross-Check ...............................................................17

        1.    The Hours Spent on this Action by Plaintiffs' Counsel Are Reasonable ..................................................................18

        2.    Plaintiffs' Counsel's Hourly Rates Are Reasonable..........19

        3.    The Imputed Risk Multiplier Is Justified ..................21

VI.   PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES .............................................22

VII.  THE INCENTIVE AWARDS REQUESTED ON BEHALF OF THE CLASS REPRESENTATIVES ARE REASONABLE ......................23

VIII. CONCLUSION...................................................................................25

iv

---

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Aarons v. BMW of N. Am.*,
   2014 U.S. Dist. LEXIS 118442 (C.D. Cal. 2014) ...........................................20

*Abdullah, et al. v. U.S. Security Associates, Inc.*,
   731 F.3d 952 (9th Cir. 2013) ............................................................................6

*Alvarado v. Nederend*,
   2011 WL 1883188 (E.D. Cal.2011) ................................................................11

*Anderson v. Nextel Retail Stores, LLC*,
   No. CV 07-4480 (C.D. Cal. 2010)...................................................................20

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013)......................................................................17

*Barile, et al. v. Boston Market Corporation*,
   Case No. 05-CV-1360 BTM (JMA) (S.D. Cal. 2006) ....................................11

*Benitez et al. v. Wilbur*,
   Case No. 1:08-CV-1122 LJO GSA (E.D. Cal. 2009)......................................11

*Birch v. Office Depot, Inc.*,
   Case No. 06-CV-1690 DMS (WMC) (S.D. Cal. 2007) ..................................11

*Blackwell v. Foley*,
   724 F. Supp. 2d 1068 (N.D. Cal. 2010)...........................................................19

*Boeing Company v. Van Gemert*,
   444 U.S. 472 (1980).............................................................................................9

*Brown v. Hain Celestial Grp., Inc.*,
   2016 WL 631880 (N.D. Cal. 2016)..................................................................20

*Burden v. SelectQuote Ins. Servs.*,
   2013 WL 3988771 (N.D. Cal. 2013).................................................................17

*Chavez et al. v. Petrissans et al.*,
   Case No. 1:08-CV-00122 LJO-GSA (E.D. Cal. 2009) ...................................11

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

*Ching v. Siemens Indus., Inc.*,
    2014 WL 2926210  (N.D. Cal. 2014) ..............................................14

*Fernandez v. Victoria Secret Stores LLC*,
    2008 U.S. Dist. LEXIS 123546 (C.D. Cal. 2008) ............................15

*Glass v. UBS Financial Services, Inc.*,
    2007 WL 221862 (ND Cal 2007) ....................................................23

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. 2013) ...............................................23

*Hopkins v. Stryker Sales Corp*,
    2013 WL 496358 (N.D. Cal. 2013) .................................................11

*In re Activision Sec. Litig.*,\
    723 F.Supp. 1373 (N.D.Cal.1989) ...................................................16

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. 2005) ....................................... 16, 17

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................................18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .................................................... 11, 16

*In re Omnivision Technologies, Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal., 2008) ..................................... 11, 16

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ..................................................... 11, 16

*In re Walgreens Co Wage & Hour Litigation*,
    Case No. 2:11-cv-07664 (C.D. Cal. 2014) .....................................20

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir.1994) .............................................................8

*Ingalls v. Hallmark Mktg. Corp.*,
    Case No. 08-CV-4342-VBF (E) (C.D. Cal. 2009) .........................11

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

*Intel Corp. v. Terabyte Int'l, Inc.*,
　　6 F.3d 614 (9th Cir. 1993) ..................................................................17

*Kearney v. Hyundai Motor Am.*,
　　2013 U.S. Dist. LEXIS 91636 (C.D. Cal. 2013) .............................20

*Knight v. Red Door Salons, Inc.*,
　　2009 WL 248367 (N.D. Cal. 2009) ...................................................11

*Linney v. Cellular Alaska P'ship*,
　　1997 WL 450064 (N.D.Cal.1997) .....................................................16

*Lusby v. GameStop Inc.*,
　　2015 WL 1501095 (N.D. Cal. 2015) .................................................17

*Mangold v. California Pub. Utils. Comm'n*,
　　67 F.3d 1470 (9th Cir. 1995) ............................................................11

*McKenzie v. Federal Express Corp.*,
　　2012 U.S. Dist. LEXIS 103666 (C.D. Cal. 2012) ..........................21

*Mills v. Auto-Lite Co.*,
　　396 U.S. 375 (1970).............................................................................9

*Moreno v. City of Sacramento*,
　　534 F.3d 1106 (9th Cir. 2008) ..........................................................19

*Morris v. Lifescan, Inc.*,
　　54 F. App'x 663 (9th Cir. 2003) ............................................... 14, 16

*Pasquale v. Kaiser Foundation Hospitals*,
　　Case No. 08-CV-785-MMA(NLS) (S.D. Cal. 2008) .......................11

*Paul, Johnson, Alston & Hunt v. Graulty*,
　　886 F.2d 268 (9th Cir. 1989) ..............................................................8

*Rippee, et al. v. Boston Market Corporation*
　　(S.D. Cal. 2005) 408 F. Supp.2d 982 ...............................................11

*Rodriguez v. West Publishing Corp.*,
　　563 F.3d 948 (9th Cir. 2009) ............................................................23

vii

*Romero v. Producers Dairy Foods, Inc.*,
  2007 WL 3492841 (E.D. Cal. 2007) ..............................................................16

*Rutti v. Lojack Corp., Inc.*
  (C.D. Cal, 2012) 2012 WL 3151077 ..............................................................19

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ......................................................................10

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ........................................................................21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................23

*Steiner v. American Broad. Co.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ..............................................................21

*Steinfeld v. Discover Fin. Servs.*,
  2014 WL 1309692 (N.D. Cal. 2014) ..............................................................21

*Van Vranken v. Atl. Richfield Co.*,
  901 F.Supp. 294 (N.D.Cal.1995).............................................................. 21, 22

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (2002) .............................................................................. passim


**State Cases**

*In re Consumer Privacy Cases*,
  175 Cal. App. 4th 545 (2009)........................................................................16

*Laffitte v. Robert Half International, Inc.*,
  1 Cal 5th 480 (2016) ....................................................................................17

*Richard v. Ameri-Force Mgmt. Servs., Inc.*,
  No. 37-2008-00096019  (San Diego Sup. Ct., 2010) ....................................20

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ....................................................................................11

*Sutter Health Uninsured Pricing Cases*,
  171 Cal. App. 4th 495 (2009) ........................................................................21

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

**<u>Statutes and Rules</u>**

FRCP 23 ................................................................................................ 8, 22

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF RELIEF SOUGHT

Collectively, Plaintiffs' Counsel have secured a $21,000,000.00 non-reversionary settlement fund from Defendant U.S. Security Associates, Inc ("Defendant") in the matters of *Abdullah, et al. v. U.S. Security Associates, Inc.* ("Abdullah"), and *Stone v. U.S. Security Associates, Inc.* ("Stone"), for the benefit of more than 22,000 employees and for the LWDA.  This Class and PAGA Action (the "action") arose from alleged wage and hour violations that were alleged to affect all the security guard employees.  Plaintiffs now seek the following relief: (1) an award of attorneys' fees in the amount of $6,871,113.00 to Plaintiffs' counsel, equal to one-third of the common fund less fees on employer-side payroll taxes; (2) reimbursement of $136,404.28 in costs incurred by Plaintiffs' counsel; (3) incentive awards of $15,000 for each of the three Representative *Abdullah* Plaintiffs; and (4) an incentive award of $5,000 for the PAGA Representative *Stone* Plaintiff.  These requests were detailed in the Notice of Settlement provided to Class Members.  *See* Exhibit _ to the concurrently filed Saltzman Declaration.

## II.    INTRODUCTION

Plaintiffs brought this risky and complicated class action in order to secure important workplace protections for the security guard employees, and to obtain just compensation. Ultimately, following almost nine years of litigation, Plaintiffs' counsel secured a settlement agreement that creates a $21,000,000.00 common fund (before deductions) for the benefit of the certified Class. No part of the Settlement will revert to Defendant.  Plaintiffs and their counsel accomplished this commendable achievement after facing vigorous opposition over the course of almost nine years, during which the litigation very often implicated novel legal theories and while the applicable wage and hour law in California remained in flux.

During the course of this lengthy action, Plaintiffs' counsel collectively invested, on a wholly contingent basis, 7,344.45 hours of their time to the prosecution

of this Action.  These hours were spent on numerous distinct tasks, discussed infra. Some of the broad categories of such tasks included the following: (i) researching the complex issues involved in this wage and hour claim, and then drafting several iterations of operative complaints; (ii) exchanging, responding to and often meeting and conferring over multiple sets of written discovery; (iii) reviewing and analyzing thousands of pages of relevant pay plans, policy manuals, training documents and personnel files, class member payroll records, class member time and scheduling data; (iv) preparing for, taking and/or defending numerous depositions of PMQ witnesses and class members; (v) meeting with and preparing all class representatives for their depositions, and then defending those depositions; (vi) engaging in informal discovery and interviews of literally dozens of class members following the dissemination of class certification notice, and then throughout the case; (vii) analyzing, with the assistance of retained experts the voluminous databases and hard copy payroll records consisting of days/time worked and payroll issues; (viii) preparing, filing and fully briefing certification, and obtaining a favorable ruling thereon; (ix) fully briefing, arguing and prevailing upon Defendant's appeal of this Court's order granting certification, and obtaining a favorable published decision thereon; (x) successfully opposing Defendant's Petition for Certiori to the Supreme Court; (xi) fully briefing post-certification cross-motions for summary judgment and Defendant's decertification motion; (xii) preparing for and attending multiple (4) mediation sessions, and thereafter reaching the resolution now before this Court; and ultimately (xiii) preparing the preliminary approval motions, supporting papers, and the final approval motions/papers.  Even following final approval, counsel anticipate spending additional time assisting class members with inquiries that always follow the distribution of settlement checks to large classes such as involved here.  Plaintiffs now request a fee award for their counsel equal to one-third of the common fund less any fees on employer-side payroll taxes ($6,871,113.00). Plaintiffs have calculated the total share of employer-side payroll taxes included in the settlement as 386,663.50

2

leading to a reduction of $128,887 in fees sought. (See Saltzman Dec. ¶ 20). The relevant case law amply supports the requested fee award.

Throughout this litigation, Plaintiffs' counsel took on considerable contingent risks. In addition, Counsel  risked substantial out of pocket expenses, in the amount of $136,404.28, (as detailed in the declarations of counsel filed herewith, and as summarized in the charts attached to the Saltzman declaration), all of which could have been lost if the action did not succeed.  Given the many defenses raised by the Defendant, the entire expenditure of time and out-of-pocket expenses summarized above could have been wiped out entirely at any time.  This could have occurred by any number of events, including but not limited to (i) the possibility that the class could have been denied certification, (ii) the possibility that Defendant's policies could have been found legal,  (iii) the possibility that the job duties of the class-members might be found to meet the "nature of the work" exception allowing for on-duty meal breaks, (iv) the possibility that Defendant could have prevailed upon its appeal, (v) the possibility that Defendant could have prevailed in its efforts to obtain en banc review of the appellate decision, (vi) the possibility that the Defendant could have obtained Supreme Court review and perhaps prevailed therein, or (vii) the possibility that Defendant could have prevailed in its motion for summary judgment and/or motion for decertification, which were both pending at the time of settlement.

Keeping these perils in mind, this action has essentially been an almost nine year expedition through an active mine-field, through which Plaintiffs' counsel has had to carefully navigate a safe path, relying throughout on their specialized knowledge and experience in complex wage and hour class actions.  Having finally put the vast majority of the previously mentioned risk factors to rest in a favorable manner, but still pending hearing on the cross-motions for summary judgment and a motion for decertification, the settlement was finally reached.

When finally approved, the Settlement will provide cash payments to more than 22,000 class members.  These benefits will be distributed without the need for

3

any claim forms.  The entire Settlement fund will be paid to the class members, after deducting approved fees, costs, incentive awards, settlement administration costs, employer taxes and the PAGA payment.  Only 10 possible Settlement Class Members requested exclusion, so the participation rate is an astounding 99.95%.

The request for attorneys' fees is fair and reasonable. The requested percentage of the common fund is comparable to fee awards made in similar contexts, and the request is further supported by the lodestar cross-check.  Plaintiffs also request reimbursement of $136,404.28 in out-of-pocket costs incurred by counsel on behalf of the Class.  These costs were reasonably incurred in prosecuting this action.

Finally, Plaintiffs also request herein incentive awards of $15,000 for Plaintiffs Abdullah, Kimbrough, and Aguilar as class representatives in the *Abdullah* matter, and an award of $5,000 for Plaintiff Stone as representative of the *Stone* PAGA matter.  The requested enhancements or incentive awards sensibly compensate these named Plaintiffs for their substantial roles in prosecuting this Action, undertaking the reputational risks associated with the action, granting broad general releases, and helping to secure the benefits of the Settlement for the Class.

## III.   BACKGROUND

### A.   Procedural History

#### 1.   Relation of the *Abdullah* and *Stone* Actions

Plaintiff Abdullah filed a putative class action on January 13, 2009, against Defendant in the Superior Court of California for the County of Los Angeles, Case No. BC405465. Plaintiffs Kimbrough and Aguilar were later added as additional plaintiffs. Plaintiffs filed a First Amended Complaint on March 9, 2009, and a Second Amended Complaint on December 18, 2009. The primary claim asserted was a challenge to the Defendant's on-duty meal break policy imposed on the employee guards.  The *Abdullah* Plaintiffs sought to represent a class of all of Defendant's current and former security guard/officer employees who worked in California at any time after July 1, 2007 (a prior settlement had released such claims up to that date).

4

On December 30, 2009, Defendant removed the action to the Central District of California where it was assigned Case No. CV 09-9554-GHK (Ex).

A second putative class action was filed several years later against this Defendant by Plaintiff Juan-Leal Cardenas, on May 31, 2013, in the Superior Court for the County of Riverside. After removal, it was assigned Case No. 14-CV-00984, and then was related to the *Abdullah* action.

Plaintiff Robert Stone also filed a representative action on January 27, 2015, in the Superior Court for the County of Los Angeles. After its removal, it was assigned Case No. 15-CV-02366, and then was also related to *Abdullah.*

On July 6, 2015, the Court ordered all class allegations struck from the operative *Cardenas* and *Stone* complaints, leaving only individual claims and representative PAGA claims in those two actions. On September 9, 2016, the *Juan-Leal Cardenas v. U.S. Security Associates, Inc.* action was dismissed with prejudice when Plaintiff Cardenas settled his claims on an individual basis, leaving *Robert Stone v. U.S. Security Associates, Inc.*, under Case No. 14-CV-00984, as an individual and PAGA action, still pending under Case No. 14-CV-00984. This settlement resolves both the *Abdullah* and *Stone* actions.

## IV.   LITIGATION OF THE *ABDULLAH* MATTER

The Parties have aggressively litigated this action for almost nine years. As detailed below, this action has been fraught with contention ranging from extensive motion practice, to appeal and ultimately full trial preparation.

Prior to certification, Plaintiffs engaged in extensive discovery regarding Defendant's wage policies and practices, databases, and time/payroll records in order to support the briefing for their highly contested certification motion. Plaintiffs' counsel also engaged the assistance of an expert witness to aid in the data and records review and defended the depositions of the *Abdullah* class representatives.

Plaintiffs obtained certification on their primary claim challenging Defendant's on-duty meal break policies along with six secondary and/or derivative claims.

5

Certification was highly disputed by Defendant, which included one hundred and three (103) class member declarations in support of its opposition. Following certification, Defendant unsuccessfully moved for reconsideration of the Court's certification order, successfully petitioned for leave to appeal certification as to the primary "on-duty" meal break claim, and then the Ninth Circuit affirmed that ruling in a published decision, *Abdullah, et al. v. U.S. Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013).  Following that, Defendant unsuccessfully sought en banc review and then unsuccessfully petitioned for certiorari to the United States Supreme Court.

The resulting final decision of the Ninth Circuit was not only critical to this case, but to the bench and bar generally.  In just over four years, the decision has been cited in more than one hundred and sixty decisions.[1]

Following the appeal, Class Counsel associated in Marlin & Saltzman LLP, based upon the firm's reputation and actual class action trial experience, having participated in five class action trials. (See Saltzman Decl. ¶ 3). Plaintiffs successfully sought an extension of the class period forward to include the two plus years of the appeal, after which notice of the certification was mailed to all current and former guards employed by Defendant in California from July 1, 2007, until June 30, 2015, a group then numbering just over 15,000. Out of such a large class, now numbering over 22,000, only ten putative class members have now elected to opt out.

Thereafter, following the notice of certification, the parties continued with in-depth merits discovery. This included fourteen class member depositions, seven depositions of Defendant's statewide management personnel, multiple (four) expert witness depositions of Plaintiffs' and Defendant's expert witnesses within the time frame allowed by the District Court in its Pre-Trial Scheduling Order, further significant production of classwide payroll and time and attendance records, and

---

[1] Plaintiffs' motion for preliminary approval noted that the decision had been cited approximately 140 times, that number has now risen to approximately 163 case citations. The case has also been cited by several secondary sources, administrative decisions, and documents filed by various counsel in trial court and appellate briefing.

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

numerous client contracting records and documents by Defendant, and yet a further deposition of Class Representative William Kimbrough. The fourteen class member depositions were often multi-tracked for the same day, occasionally requiring several of Plaintiffs' attorneys to attend depositions at multiple locations throughout California at the same times. (Saltzman Decl. ¶ 7).

Finally, after the close of all discovery, including experts, and within the time limits established by the Court's pre-trial deadlines, the Abdullah Plaintiffs and Defendant filed joint cross motions for summary judgment, again as to the primary issue of the on-duty meal breaks. Defendant also filed a motion for decertification of the class. These motions were pending for hearing at the time of settlement.

Having been unsuccessful in three previous mediation attempts which had occurred throughout the case, the Parties agreed to attend one final mediation session before well-known class action mediator Hunter Hughes, Esquire, of Atlanta, Georgia, on November 22, 2016. Prior to mediation the parties engaged in an extensive and cooperative exchange of even more information. The mediation did not result in settlement, however the Parties worked with Mr. Hughes for several months post-mediation and eventually agreed to the terms of the Settlement Agreement now before the Court, to resolve the Abdullah action, plus the representative wage claims under PAGA raised in the Stone action. (Saltzman Decl. ¶ 13)

Plaintiffs respectfully refer the Court to the motion for preliminary approval, and the supporting declaration(s) thereto. To avoid unnecessary duplication, Plaintiffs respectfully incorporate these background materials herein. The declarations therein more fully describe the pleadings, class certification efforts, discovery, dispositive motions, mediations, and settlement agreement, and an analysis of claims and potential damages considered in reaching the Settlement.

### A.    The Settlement Agreement

After almost nine years of complex litigation, the Parties finally reached a settlement. The Settlement provides that Plaintiffs may apply to the Court for an

7

award of attorneys' fees from the settlement fund not to exceed one-third. The Settlement further provides that the Plaintiffs – who have all executed broad general releases- may apply for the Incentive Awards described above.

**B.     Plaintiffs' Counsel's Lodestar**

Class counsel's combined lodestar figure, as detailed below and in the supporting declarations filed herewith, is $4,331,945.50, reflecting 7,344.45 hours of attorney and paralegal time devoted to this action over the past eight years.

**C.     Litigation and Settlement Administration Costs**

Plaintiffs' counsel have incurred $136,404.00 in litigation costs to date (discussed more fully in the supporting declarations submitted by Plaintiffs' counsel, and summarized in the charts attached to the Saltzman Dec. Exhibit 3). In addition, the Parties have agreed to allocate $149,000 of the Settlement to cover the Administrator's costs (i.e., settlement notice, class member contacts, check calculations and distribution, tax reporting, etc.). Saltzman Dec. at ¶ 34

**V.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE**

*FRCP 23(h )*provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Moreover, "it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. The amount of such a reward is that which is deemed 'reasonable' under the circumstance." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). Where, as here, a common fund is created for the benefit of the Class, the Court may award attorneys' fees, in its discretion, based on a percentage of the common fund or based on the lodestar method. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir.1994); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (2002). Moreover, the U.S. Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of

8

persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert,* 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.,* 396 U.S. 375, 392-93 (1970). Here, the entire fund will be paid out.

As stated, the requested fee award of $6,871,113 equals less than 1/3 of the $21 million settlement fund, and counsel have incurred 7,344 hours to date, resulting in a lodestar of $4,331,945.50. The fee requested equates to a modest ***multiplier of only 1.6.*** In short, Class Counsel have been stretched to the limit to effect this exemplary recovery against a very strong opponent, ably represented throughout this case by excellent first tier litigation firms. Putative class members were advised via the mailed Class Notices that the attorneys' fees described herein would be requested at the Final Approval Hearing and that they would have the opportunity to object. The objection deadline has now passed, and absolutely no objections have been submitted as to the fees, costs or enhancements. As discussed more fully below, the requested fee award is justified under both the percentage-of-fund approach and the lodestar cross-check. Given the exemplary settlement achieved after thoroughly extensive litigation, and the favorable terms of the self-effecting "no-claims" payment process, and the fact that literally every settlement dollar agreed to will be paid out by the Defendant, it was no surprise that no objections to these requests were submitted.

The results that Class Counsel achieved in this case are indeed commendable. First, they obtained an extremely important and oft-cited published decision, greatly adding to the law governing on-duty cases specifically as well as certification generally. Additionally, on a global level, the gross recoveries per employee average $948.90 ($21,000,000 / 22,131 class members), with the hypothetical full time employee who may have worked throughout the entire class period (hereinafter "FTEs") eligible to receive as much as $9,130.00. This class litigation was complex and risky, requiring a high degree of skill and experience from Class Counsel. To be sure, the attorneys at Marlin & Saltzman, The Law Offices Of Peter M. Hart,

9

Diversity Law Group, and Law Offices of Kenneth H. Yoon, plus PAGA counsel, The Dion-Kindem Law Firm and the Offices of Lonnie Blanchard, have all demonstrated significant skill and experience not only in class actions generally, but also in wage and hour class actions.[2] In this case, they successfully navigated this longstanding consolidated litigation through protracted discovery, class certification, dispositive motions and then comprehensive trial preparation, culminating in the $21 million settlement now before the Court.

The attorneys' fees requested in this litigation were entirely contingent. Plaintiffs' counsel invested an enormous expenditure of time/work over the span of almost nine years to achieve this Settlement.[3] But Class Counsel and the Class easily could have recovered little or nothing, for the many reasons summarized above. In other cases, particularly wage and hour cases, similar factors to those raised here have justified fee awards of one-third of the common fund.

## A. The Requested Fee Award is Reasonable Under the Percentage-of-Fund Method

Under the percentage-of-fund approach in common fund cases, the Ninth Circuit begins with a 25% "benchmark" for attorneys' fees. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). This "benchmark" is simply a starting point. *See Vizcaino*, 290 F.3d at 1048. "Selection of the benchmark or any other rate must be supported by findings that take into account all the circumstances of the case." *Id.* In practice, the benchmark is often exceeded. As noted in many district court decision, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036,

---

[2] See Generally Saltzman Dec. ¶¶ 3-4; Hart Dec. ¶¶ 21-23; Yoon Dec. ¶¶ 4-8; Lee Dec. ¶¶ 7-10; Blanchard Dec. ¶¶ 3-7; Dion-Kindem Dec. ¶¶ 3-9

[3] Class Counsel seek fees relating to the complete handling of this case. This includes any additional work remaining to be performed by Class Counsel in securing final approval of the Settlement, ensuring that the Settlement gets fully and fairly administered, and assisting those class members (many of them) who will inevitably have questions, as typically happens in such cases.

1047 (N.D. Cal., 2008); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (same). Awards of 33.3% of the common fund, as requested here, are not uncommon. *See, e.g.*,*Hopkins v. Stryker Sales Corp*, 2013 WL 496358, * 3 (N.D. Cal. 2013)(citing six class actions with fee award of at least **33.33%**); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming **33.33%** of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming **33.33%** of a $12 million common fund).[4]

In diversity cases such as this: "Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees." *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). California courts applying California law similarly endorse the common fund doctrine for attorneys' fee awards. *See Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).

When evaluating whether the percentage sought by counsel is reasonable, the Court may consider the following factors: (1) the results achieved; (2) the risk involved with the litigation; (3) the skill required and quality of work by counsel; (4) the contingent nature of the fee; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-1050. Each of these factors supports fee requested here.

### 1.     Results Obtained for the Class

The results achieved here were very favorable, especially given the significant challenges Plaintiffs remaining through trial and further appeal. Specifically, the Joint Cross-Motion For Summary Judgement (later withdrawn pending settlement)

---

[4]     *See also,  Alvarado v. Nederend*, Case No. 1:08–cv–01099 OWW DLB, 2011 WL 1883188 (E.D. Cal. May 17, 2011) [**33.33%];** *Benitez et al. v. Wilbur*, Case No. 1:08-CV-1122 LJO GSA (E.D. Cal. Dec. 15, 2009) [**33.33%**]; *Birch v. Office Depot, Inc.*, Case No. 06-CV-1690 DMS (WMC) (S.D. Cal. Sept. 28, 2007) [**40%**]; *Chavez et al. v. Petrissans et al.*, Case No. 1:08-CV-00122 LJO-GSA (E.D. Cal. Dec. 15, 2009) [**33.3%**]; *Ingalls v. Hallmark Mktg. Corp.*, Case No. 08-CV-4342-VBF (E) (C.D. Cal. Oct. 16, 2009) [**33.33%**]; *Pasquale v. Kaiser Foundation Hospitals*, Case No. 08-CV-785-MMA(NLS) (S.D. Cal. April 29, 2008) [**33.33%**]; *Rippee, et al. v. Boston Market Corporation* (S.D. Cal. 2005) 408 F. Supp.2d 982; and *Barile, et al. v. Boston Market Corporation*, Case No. 05-CV-1360 BTM (JMA) (S.D. Cal., 2006) [**40%**];

11

---

highlighted several of the unique legal issues likely to be subjected to appeal post-final judgment, such as Defendant's position that it could not be legally required to hire additional employees to satisfy the nature of the work exception; a position which was juxtaposed by Plaintiffs' argument that the nature of the work exception could not be validly triggered by staffing decisions entirely within Defendant's control. Thus, even if Plaintiffs prevailed in the trial court, all bets would have been off the table in any post-trial appeal and the class would have been subjected to potentially several more years awaiting an uncertain recovery.

Both sides faced extreme exposure in pushing forward to trial after almost nine years of time and effort had been invested in the litigation, making it an ideal time for a reasoned compromise. Further, the Plaintiffs were able to mediate their viewpoints from an extremely informed posture, having gone through the certification process, a full appeal, and having fully briefed the dispositive cross summary judgment motions. In short, Plaintiffs pulled no punches in fully working up this case to provide maximum leverage in negotiating for the best settlement value possible.

The settlement agreement reached provides real and substantial cash benefits to the Class - a $21 million settlement fund. This common fund will be distributed to all Settlement Class Members who did not opt-out, less the approved deductions.

As set out in the preliminary approval motion, and as reflected in the Saltzman Declaration filed therewith, class members in this litigation will recover significant cash settlements that increase with the number of weeks worked – ***with any full time employees who worked throughout the entire class period (the so-called FTE's) eligible to recover almost ten thousand dollars***. There is no reversion to Defendant allowed under this Settlement; there is no need for class members to submit claim forms. Every participating settlement class member will be mailed a check.

This factor strongly supports upward departure from the 25% benchmark.

### 2.    The Risks of Litigation

This case presented considerable litigation risks. During the many years it has

12

been pending, Plaintiffs have had to overcome countless uncertainties, such as (i) the risk that class certification would not be granted; (ii) the possibility that Plaintiffs' success in obtaining class certification would be undone upon appeal, en banc review, and/or Supreme Court review; (iii) the further risk that the court would find Defendant's on-duty meal period practices lawful based upon the "nature of the work" exception; (iv) the possibility that summary judgment would be granted in Defendant's favor; (v) the risk that the class would be decertified prior to a final judgment being issued; (vi) the possibility that Defendant would prevail at trial; and (vii) the risk that Defendant would prevail upon appeal from a final judgment.

The risks presented by a potential appeal of a final judgment in this action would be substantial. Defendant sought by Summary Judgment to have the Court adopt a broad view of the nature of the work exception. Plaintiffs believe that this argument, if accepted by the Court of Appeal, would have allowed employers to intentionally create a nature of the work exception for on-duty meal breaks due to their own staffing choices, thereby fashioning a loophole for employers to circumvent the narrow intent of the law. This is a novel issue of law that has not been heard by the higher courts.  If decided against Plaintiffs, it could have wiped out most of the over eight year effort on behalf of the class and negatively affected the rights of countless California employees burdened with on-duty meal periods.

Plaintiffs needed to successfully navigate all the legal and factual issues, over the many years involved. During that time, Defendant litigated every angle, including certification, summary judgment and judgment on the pleadings.  Plaintiffs had to prevail at every crossroad just to get to the fourth and final mediation.

Though Plaintiffs prevailed at class certification, certification itself posed a huge risk when the case was filed. Defendant urged the Court to adopt its position that each of its post locations required an individual inquiry due to alleged differences in the type of work performed at each location and supposed site-specific needs. At the final mediation, in fact, Defendant's motion for de-certification was pending.

Litigation risks in a complex and long-drawn-out class action weigh strongly in favor of an award above the benchmark.  See *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014); see also *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award where district court noted that class counsel achieved excellent results in a risky and complicated class action despite vigorous opposition throughout the litigation).

This factor also strongly supports upward departure from the 25% benchmark.

### 3.    The Skill Required and Quality of Work by Counsel

The skill required by Counsel in litigating a class action case is in many ways tied in to the overall risks of litigation described above. As previously stated, class Counsel faced numerous risks in this action in both the trial court and on appeal. This action required class counsel to be adept in all respects, such as having the skills to (i) successfully navigate certification; (ii) navigate through the appeals process and protect said favorable result; (iii) navigate the action through summary judgment and decertification motions; and (iv) not only to prepare for, but to actually carry out a full class action trial had settlement not been reached.  Here, Class Counsel accomplished all these requirements, and associated in counsel with previous experience in handling five class action trials. (Saltzman Dec. ¶ 3).

 Additionally, the damages issues in controversy required counsel to perform with exceptional skill and finesse, as even one mistake during the critical phases of litigation could have wiped out literally millions of dollars of potential recovery for the Class. Class Counsel prevailed on class certification and, after persevering for several more years, achieved a noteworthy $21 million settlement.

This factor also strongly supports upward departure from the 25% benchmark.

Class Counsel further devoted extensive time and resources over more than eight years in order to advance Plaintiffs' claims, as demonstrated in the declarations of Class Counsel filed herewith, and in the detailed billing records attached thereto. Aside from the vigorous litigation described above, they were also continuously

14

engaged in the analysis of the voluminous and varied databases and hard copy documents produced by the Defendant, often assisted via the engagement of experts in the data and document analysis fields to add expert knowledge to the studies carried on by Class Counsel already experienced in these areas. Class Counsel were tenacious in their commitment to the case, and constant willingness to advance whatever costs and expenses were necessary.

This factor also strongly supports upward departure from the 25% benchmark.

### 4. The Contingent Nature of the Fee

The attorneys' fee award should take into account the heightened risks of representation on a *purely contingent basis* over the span of many years. The Ninth Circuit has recognized that "attorneys whose compensation depends on their winning the case must make up in compensation in the cases they win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051. Here, the request is simply for a perfectly normal percentage fee. Courts have recognized this as reasonable. For example, in awarding 34% of the common fund to class counsel in an employment case, District Judge Morrow explained that an award of 34% of the fund "is supported by the fact that typical contingency fee agreements provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried." *Fernandez v. Victoria Secret Stores LLC*, No. 06-04149-MMM, 2008 U.S. Dist. LEXIS 123546, *55-57 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements) (emphasis added).

Additionally, the contingent exposure herein was heightened because Class Counsel needed to advance substantial costs ($136,404.28) that would not have been recouped if the litigation had been unsuccessful. In particular, Class Counsel's representation of the Class "entailed hundreds of thousands of dollars of expense." *Vizcaino*, 290 F.3d at 1050. In addition, given the extreme time commitment required both to develop and pursue the plaintiffs' theories, and to defend and respond to the Defendant's vigorous litigation of its defenses, Class Counsel

15

necessarily had to martial its resources in a manner that caused it to pass on other case opportunities in order to be able to devote the time and money needed to litigate this case.  Simply stated, even in this 24/7 "always on" litigation/work world, there are only so many cases that can be handled at any one time, and choices – often very difficult ones - need to be made at every step during the handling of complex and difficult matters such as this case, in terms of additional matters that can be taken on while handling such cases.  In cases such as this, the public interest is best served by rewarding attorneys who assume representation on a contingent basis, by way of an enhanced fee to compensate them for the very real risk that they might be paid nothing for their work.  *See id.*; *see also In re Omnivision*, 559 F.Supp.2d at 1047.

This factor also strongly supports upward departure from the 25% benchmark.

### 5.    Awards Made in Similar Cases.

California courts and Ninth Circuit district courts alike have observed that under the percentage method, "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558, n. 13 (2009); see also *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (same); see also *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18, n. 12 (C.D. Cal. June 10, 2005) (noting more than 200 federal cases have awarded fees higher than 30%).  Here, the request for attorneys' fees in the amount of one-third of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases.  See *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1375 (N.D.Cal.1989) (awarding 32.8% fee); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, *7 (N.D.Cal.1997) (awarding 33.3% fee); *In re Pac. Enterprises* Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *In re Mego Fin*. Corp. Sec. Litig., 213 F.3d 454, 460 (9th Cir.2000) (affirming fee award equal to one-third of recovery); *Morris*, 54 F. App'x at 664 (affirming 33% fee award).

The California Supreme Court in *Laffitte v. Robert Half International, Inc*., 1 Cal 5th 480 (2016), recently affirmed percentage awards for attorney fees from common funds, and upheld a 33.33% award in a wage and hour class action.

Notably, numerous other district courts in this State have concluded that such fee awards are appropriate in wage and hour class actions. See, e.g., *Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (granting 33% fee award and collecting cases regarding the same); *Burden v. SelectQuote Ins. Servs*., No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of fund); *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 450 (E.D. Cal. 2013) (granting 33% fee award and collecting cases regarding the same); *In re Heritage* Bond Litig., No. 02-ML-1475 DT, 2005 WL 1594403, at *18, n. 12 (C.D. Cal. June 10, 2005) (noting more than 200 federal cases have awarded fees higher than 30%). In short, Plaintiffs' request for attorneys' fees fall in line with awards in other wage and hour cases in this District and elsewhere. Again, this is especially so where, as here, the entire common fund will be fully paid out, with absolutely no claim form requirement. The settlement simply could not be easier or "cleaner" from a class member's standpoint.

This factor also strongly supports upward departure from the 25% benchmark.

## B. The Requested Fee Award is Also Reasonable Using the Lodestar Cross-Check

In common fund cases, the lodestar method may be used as a cross-check to "validate" the percentage-of-fund method. The Court applies the lodestar method by multiplying the number of hours reasonably spent litigating, by a reasonable hourly rate. See *Intel Corp. v. Terabyte Int'l, Inc*., 6 F.3d 614, 622 (9th Cir. 1993). The district court may then adjust the lodestar figure, by applying a "multiplier" thereto.

Where the use of the lodestar method is employed solely as a cross-check, as is true in common fund cases, it can be performed with a less exhaustive cataloguing and review of counsel's hours. See, *In re Immune Response Sec. Litig*., 497 F. Supp.

17

2d 1166 (S.D. Cal. 2007)("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").  Nonetheless, despite this clearly more relaxed standard for the lodestar cross-check analysis, Class Counsel herein are in fact submitting their extensive hourly records so that the Court can have full comfort that it has been provided with ample facts to conduct its review.

### 1.    The Hours Spent on this Action by Plaintiffs' Counsel Are Reasonable

In support of the lodestar determination, Plaintiffs have submitted the declarations of Class Counsel attesting to their total hours, hourly rates, experience, and efforts to prosecute this action, and as noted, have also lodged their billing records, including extensive and detailed time entries.  In pursuit of this matter, Plaintiffs' counsel has collectively incurred 7,344 hours of attorney and paralegal time.  The number of hours that Plaintiffs' counsel have devoted to this litigation is reasonable, given: (1) the extensive written discovery engaged in by both sides, as well as the numerous depositions taken and defended; (2) the extensive briefing on motions for class certification, summary judgment, and oppositions to decertification and summary judgment (among other motions); (3) the extensive records, databases and policy records produced, all of which had to be analyzed and some of which consisted of paper records; (4) the developing legal landscape over the span of the past eight years; (5) the breadth of data to be analyzed in conjunction with Plaintiffs' experts; (6) the extensive appellate briefing and argument to uphold the trial court's favorable certification order; (7) the comprehensive trial preparation engaged in, including obtaining the expert reports and deposing all the experts; and (8) the in-depth settlement efforts and follow-on motion work to obtain the approval sought. All of this occurred over the nearly nine long years the case was pending.

Generally, district courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."[5] "[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee."[6] This case was no exception. Plaintiffs' counsel thoughtfully staffed the case and litigated it efficiently and effectively. Initially the case was staffed by the three originating firms, and then post-certification, the Marlin & Saltzman firm was associated in to complete the trial work up, and prepare the case for either trial or settlement. At all times, all work assignments were coordinated between the firms.

Moreover, Class Counsel's work will not end even after final approval is achieved. Even then, as in every class action they have handled, Class Counsel understand and willingly accept that they will be called upon to assist Settlement Class Members with inquiries as to settlement issues, and will need to work with the settlement administrator and the Defendant on any issues that may arise with respect to the Settlement. Following mailing of settlement checks, past experience teaches that Class Counsel will again be called upon by class members to answer questions triggered by the distribution of checks. Again, past experience shows that this ongoing work will add significant time to the work already undertaken in this case.

In sum, given the contentious, complex, and protracted nature of this litigation, Plaintiffs' counsel total hours were reasonably incurred in litigating this action.

## 2. Plaintiffs' Counsel's Hourly Rates Are Reasonable

The Court also considers whether counsel's hourly rates are reasonable within

---

[5] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *see also Rutti v. Lojack Corp., Inc.* (C.D. Cal, July 31, 2012) No. SACV 06-350 DOC JCX,, 2012 WL 3151077, at *2 ("The presumption that attorneys' claimed hours are reasonable is essential"); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. July 15, 2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed . . . is evidence of considerable weight on the issue of the time required.").

[6] *Moreno*, 534 F.3d at 1112.

the relevant community, in this case, the Central District of California.[7]   Here, Plaintiffs' counsel's attorney hourly rates range from $450 to $825 per hour, with the upper-end reserved for the most experienced partners[8].   Hourly rates for paralegals/support staff range from $150 to $225[9]. Class Counsel are highly-respected members of the bar with substantial experience in complex litigation, including complex wage and hour actions.  Here, the hourly rates for Plaintiffs' Counsel, as set forth in the supporting declaration, are comparable to those approved in similar cases in California.  *See e.g.*, *In re Walgreens Co Wage & Hour Litigation*, Case No. 2:11-cv-07664 (C.D. Cal. 2014)(this Court noted in 2014 that "billing rates that span from approximately $200 [paralegals] to $820 [senior partners] are reasonable because they prevail in both the Central District of California, and California at large, for the type of work involved in a class action.");  *Aarons v. BMW of N. Am.*, No. 11- 7667-PSG, 2014 U.S. Dist. LEXIS 118442, *40-41 (C.D. Cal. Apr. 29, 2014) (this Court again noting in 2014 that based on "the Court's own experience with hourly rates in the Los Angeles area" awarding rates ranging from $775 for the requested partner to $390-$630 for non-partners); *Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST (MLGx), 2013 U.S. Dist. LEXIS 91636, *24 (C.D. Cal. June 28, 2013)(approving hourly rates of $650-$800 for senior attorneys in a class action); *Richard v. Ameri-Force Mgmt. Servs., Inc.*, No. 37-2008-00096019  (San Diego Sup. Ct., August 27, 2010) ($695 to $750 an hour for partners; $495 an hour for associates); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480 (C.D. Cal. June 20, 2010) ($655-$750 an hour for partners; $300-$515 for associates).

The rates submitted herein, in 2017, closely mirror those approved above.

---

[7] Current rates, rather than historical rates, should be applied to compensate for the delay in payment. *See Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *8 (N.D. Cal. Feb. 17, 2016).

[8] See Saltzman Decl. Exhibits1-3; Hart Dec. Ex. A; Yoon Dec. Ex. A; Lee Dec. Ex. A; Blanchard Dec. Ex. 1; Dion-Kindem Dec. Ex. 1.

[9] *Id.*

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)

### 3.      The Imputed Risk Multiplier Is Justified

The requested $6,871,113.00 represents an imputed risk multiplier of less than 1.6 on Plaintiffs' collective lodestar of $4,331,945.50. This falls well within the range of multipliers accepted by the Ninth Circuit, the Central District of California and district courts throughout the country, and in fact is on the lower end of oft-approved multipliers. *See Vizcaino*, 290 F.3d at 1051 n.6 (surveying class actions settlements nationwide, and noting that 83 percent of multipliers fell within the 1.0 to 4.0 range); *see also Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995) (finding a risk multiplier of 3.6 to be "well within the acceptable range for fee awards in complicated class action litigation"); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692, at *2 (N.D. Cal. Mar. 31, 2014) (White, J.) (applying a risk multiplier of 3.5); *see also Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65); *McKenzie v. Federal Express Corp.*, No. 10-02420-GAF, 2012 U.S. Dist. LEXIS 103666 (C.D. Cal. July 2, 2012) (approving a multiplier of 3.2 on a lodestar cross-check in percentage-based fees in wage   and hour class action); *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier on a lodestar cross-check).

The Ninth Circuit recently highlighted the importance of risk multipliers in complex class actions of the sort at issue here:

> Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. . . .  Thus, the district court must apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'  Failure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion.

*Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

Class Counsel embarked on this protracted litigation with the expectation that

21

if successful, and if they had expended great effort and had been required to advance substantial costs to further the litigation, that they would receive a risk enhancement. All theses criteria, and more, came to pass.  The hourly rates submitted do not and cannot reflect these risks.  Rather, the rates are in line with the rates charged by attorneys of similar qualifications and experience in this District.  Additionally, there is ample evidence, thoroughly discussed above, that this action was extremely risky. For these reasons, the Court should apply a cross-check lodestar multiplier that adequately accounts for the assumed risks.

Class Counsel reviewed the billing records presented herein, and made a good faith effort to exclude hours that might appear either excessive or potentially seemed unnecessary. Class Counsel coordinated effectively and efficiently, regularly consulting throughout the duration of the case to coordinate efforts in a manner that would avoid duplication of efforts and would streamline the process at all times. Saltzman Decl. ¶ 27. Work was distributed in a manner that avoided duplication of efforts during the entire course of the litigation, which included preparing the operative complaints, conducting written discovery, taking and defending depositions, preparing Plaintiffs' motions and oppositions, such as those relating to class certification and summary judgment, all trial preparation that was ongoing when the case was settled, as well as participating in all settlement negotiations.

## VI.   PLAINTIFFS' COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES

Plaintiffs' counsel are also entitled to reimbursement of reasonable out-of-pocket expenses. *See* Fed. R. Civ. P. 23(h); *see also Van Vranken*, 901 F. Supp. at 299.  In this case, Plaintiffs' counsel jointly request reimbursement for $138,893.00, for the reasonably incurred litigation costs. These costs—including costs incurred for experts, mediation, messengers, court reporters, and travel—were incidental and necessary to the effective representation of the Class.  *See Fed. R. Civ. P. 23(h)*; *see also Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *12

22

(N.D. Cal. Apr. 26, 2013).  Plaintiffs have submitted the declarations of their counsel, which identify and authenticate the reasonable expenses incurred to date.[10]

## VII.   THE INCENTIVE AWARDS REQUESTED ON BEHALF OF THE CLASS REPRESENTATIVES ARE REASONABLE

Where counsel seek "incentive" awards for the named representative plaintiffs, a district court should evaluate the requested awards using factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonable fears of workplace retaliation."[11]  Such awards are discretionary and are intended to compensate representative plaintiffs for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[12]

In this case, the three Class Representatives in the *Abdullah* action each assisted in the prosecution and settlement of the Class' claims by (1) assisting Plaintiffs' Counsel in gathering and evaluating evidence to initially file the actions, and then to investigate additional facts as needed for the subsequent consolidated amended pleadings; (2) spending substantial time assisting Class Counsel in seeking and responding to discovery, and preparing for and participating in depositions; (3) providing key insights into the policies and practices of Defendant, and assisting counsel in understanding the day to day activities of the guards, and the paperwork

---

[10] See Saltzman Decl. Exhibits 3-4; Hart Dec. Ex. B; Yoon Dec. ¶ 12; Lee Dec. Ex. B; Blanchard Dec. ¶ 10; Dion-Kindem Dec. ¶ 12.

[11] *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

[12] *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also Glass v. UBS Financial Services, Inc.*, C-06-4068 MMC, 2007 WL 221862, at **16-17 (ND Cal Jan. 26, 2007) (granting $25,000 incentive awards to each of four plaintiff representatives in wage and hour class action); *see also Quezada v. Con-way Trucking,* Case 4:09-cv-03670-JSW Document 2134 Filed 01/09/15 Page 4 of 7, at paragraph 9 thereof, (wherein the Court granted the representative plaintiff a $20,000 incentive award in a similarly long and extensive wage and hour class action.

23

both provided to them and that which they in turn had to submit each day; and (4) assisting with obtaining class certification and ultimately reaching a resolution of this longstanding dispute.  The representative Plaintiff for the *Stone* PAGA action also assisted his counsel in developing the facts and understanding the policies, so as to be able to assert those claims on behalf of the State of California.

Furthermore, given the new 'technology driven' world in which we all live and work, and the power of the internet, each of the named Plaintiffs have undeniably placed future employment prospects at risk by affixing their names to a complaint against a large employer.  It is beyond question that most employers, large and small, now perform "google" searches of prospective employees, and that having been a Class Representative in a wage class action will not be viewed favorably by most employers. Further still, each Plaintiff has executed a general release of claims, which is broader than the release being attributed to the class members. Saltzman Dec. ¶ 35.

Each of the representative plaintiffs, as noted above and in their respective declarations, was called upon to assist with all of the tasks noted above and to spend their time doing so.  Their time varied somewhat, depending on variables such as how far they had to travel for their depositions (i.e. out of town or not), how many records they had available which were then provided to and explained to counsel, etc.  Based on the interactions of the representatives with counsel, it is clear that they each spent substantial time and effort devoted to the case, in addition to the other input and reputational risks they took on for the benefit of the entire class.  This is a demonstration of truly going above and beyond, for the benefit of others.  Without people such as these representatives who take the brave steps discussed throughout his motion, there is no chance that employment practices that are believed to be wrongful can ever be properly addressed.

The requested incentive awards of $15,000 per representative in the *Abdullah* action and the $5,000 incentive award sought by the *Stone* PAGA Plaintiff, who commendably stepped forward to pursue claims against Defendant but has invested

24

considerably less time in the case, having filed his complaint in 2015 and having not been deposed; thus, accounting for the differences in the incentive awards sought. These amounts are proportionate with some of the settlement awards that may be recovered by unnamed class members - who did not have to step forward personally as did the representative plaintiffs; specifically when compared to class members who worked as full-time employees throughout the entire Class Period (hereinafter, an "FTE") who would be in line to receive up to $9,130.00.  The aggregate incentives ($50,000) equal less than ¾ of 1% of the fund. Stated otherwise, the $50,000 total request is akin to each class member contributing approximately $3.33 on average from their own recovery, to compensate the Representatives for their dedication to the cause, hard work, broad general releases, and their act of putting themselves directly into the crosshairs of litigation and risking future reputational harm.

In addition, all Settlement Class Members were advised in the Class Notice that the incentive awards would be requested at the Final Approval Hearing and that Settlement Class Members had the opportunity to object. As of the passing of the deadline for such objections, absolutely no objections to the incentive awards had been received.

## VIII.  CONCLUSION

Plaintiffs respectfully request that the Court enter the proposed Order granting the requested award of attorneys' fees, reimbursement of litigation costs, and incentive awards.

DATED:  November 3, 2017          **MARLIN & SALTZMAN, LLP**
                                  **LAW OFFICES OF PETER M. HART**

                                  By:   s/  Stanley D. Saltzman
                                        Stanley D. Saltzman
                                        Cody R. Kennedy
                                        Attorneys for Plaintiffs and the Class

25

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARDS** was filed electronically with the Clerk of Court at my direction using the CM/ECF system, which will send notification of such filing to all counsel of record on the 3rd day of November, 2017.


By:   s / Stanley D. Saltzman
Stanley D. Saltzman

Plaintiffs' Notice of Motion/ Motion for Award of Attorneys' Fees, Costs, Enhancements
Case No. CV 09-09554 PSG(Ex)